# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 05-4726

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

THOMAS B. MCLAUGHLIN and
CHRISTINE MCLAUGHLIN,

*Defendants-Appellants.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 C 2992—**Joan Humphrey Lefkow**, *Judge.*

———————

ARGUED NOVEMBER 14, 2006—DECIDED DECEMBER 8, 2006

———————

Before EASTERBROOK, *Chief Judge*, and POSNER and COFFEY, *Circuit Judges*.

POSNER, *Circuit Judge.* Just five days before the expiration of the 10-year statute of limitations, 26 U.S.C. § 6502(a), the government filed a complaint in federal district court against Thomas McLaughlin for unpaid income taxes of almost $3 million, including penalties and interest. (His daughter was joined as a defendant because the government as part of its suit was seeking to foreclose a tax lien on property that it mistakenly thought she had an interest in. She has no stake in the case and is hereby dismissed

from it.) Seven weeks later the government mailed McLaughlin a copy of the complaint and the standard request to waive service. McLaughlin did not waive service, though had he done so he would have avoided the costs subsequently incurred by the government in serving him. Fed. R. Civ. P. 4(d)(2).

The normal deadline for service is 120 days from the filing of the complaint. Fed. R. Civ. P. 4(m). But it can be extended by the district court and was—three times—with the result that McLaughlin was not served until 271 days after the complaint had been filed. Although admitting that he owes the full amount of money sought by the government, he moved to dismiss the complaint on the ground that the district judge should not have granted the extensions of time. The judge denied the motion, and McLaughlin appeals. If the appeal succeeds, the government will not be able to file a new suit, because the statute of limitations has now expired.

Initially, because of unspecified "budgetary considerations" the Justice Department lawyer handling the case did not hire a process server to serve the complaint but instead instructed an IRS officer to do so. The officer, after failing to serve McLaughlin at his home, sought him out at his office. He wasn't there, so the officer left the complaint with McLaughlin's daughter, who was. Mistakenly believing that leaving the complaint with an adult at the defendant's place of business is effective service (as it would be if it were the defendant's home, Fed. R. Civ. P. 4(e)(2), the difference being that there might be so many people at a defendant's place of business that process left with one of them might very well not reach the defendant), the IRS officer told the Justice Department lawyer that the defendant had been served. By the time the lawyer

discovered the error, the 120-day deadline had expired, but she filed a motion for a 30-day extension of time anyway, and it was granted. The government then hired a professional process server, who tried repeatedly to serve the defendant, without success, necessitating a second extension of time sought from and granted by the judge. With success still eluding the process server, the government hired another process server, who, a third extension of time having been requested and granted, finally served McLaughlin.

Although the government argued in the district court that McLaughlin had tried to evade service and that this was good cause for the long delay in accomplishing service, the judge disagreed and concluded (rather implausibly, considering the length of time it took professional process servers to succeed in serving McLaughlin) that he had not tried to evade service and that therefore the government had failed to demonstrate good cause for its delay in serving him. Nevertheless, as we said, the judge denied the motion to dismiss the suit.

Rule 4(m) states that if the defendant isn't served within 120 days, the district court "shall dismiss the action without prejudice . . . or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period." In other words, if good cause for the delay is shown, the court *must* extend the time for service, while if good cause is not shown, the court has a choice between dismissing the suit and giving the plaintiff more time ("direct that service be effected within a specified time"). *Henderson v. United States*, 517 U.S. 654, 662-63 (1996); *Coleman v. Milwaukee Board of School Directors*, 290 F.3d 932, 934 (7th

Cir. 2002). Thus the plaintiff who fails to demonstrate good cause for his delay throws himself on the mercy of the district court.

The rule specifies no criteria for the exercise of mercy. Some courts think that when as in this case an extension is sought after the 120-day deadline has passed, the plaintiff must show "excusable neglect," as that is the standard laid down by Rule 6(b)(2) for motions "made after the expiration of the specified period" for making the motion. *Turner v. City of Taylor*, 412 F.3d 629, 650 (6th Cir. 2005); *McGuire v. Turnbo*, 137 F.3d 321, 324 (5th Cir. 1998). We disagree. Rule 4(m) authorizes the district court, in a case in which the 120 days have elapsed, to "direct that service be effected within a specified time"; only if the plaintiff failed to meet the new deadline and filed a motion for an extension of time would Rule 6(b)(2) come into play. E.g., *Troxell v. Fedders of North America, Inc.*, 160 F.3d 381, 383 (7th Cir. 1998); *Horenkamp v. Van Winkle & Co.*, 402 F.3d 1129, 1132 (11th Cir. 2005); *United States v. 2,164 Watches, More or Less, Bearing a Registered Trademark of Guess?, Inc.*, 366 F.3d 767, 772 (9th Cir. 2004); Committee Note to 1993 Amendments, Rule 4(m). Rule 6(b)(2) is less generous to dawdlers than Rule 4(m), not only in requiring the plaintiff to show excusable neglect if his motion for an extension is itself untimely, but also in not requiring the judge to grant the motion even if good cause is shown. The difference in standards may be accidental, or may reflect the fact that ignoring litigation deadlines delays the finality of litigation, see Committee Note to 1946 Amendment of Rule 6, Subdivision (b), whereas missing service deadlines merely postpones the commencement of litigation. Whatever the explanation, the difference is plain enough.

Conceivably (no stronger word is possible), it could make a difference in this case whether, as we do not believe, a finding of excusable neglect is a precondition to granting an untimely motion for an extension of time within which to serve the complaint. Neglect is excusable (though not justifiable—"neglect" implies lack of justification) if there is a reason, which needn't be a compelling reason, to overlook it. *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 394-95 (1993); *United States v. Guy*, 140 F.3d 735 (7th Cir. 1998). A common reason is that the neglect didn't harm anyone, *United States v. Coney*, 407 F.3d 871, 875 (7th Cir. 2005), but it will not suffice if no excuse at all is offered or if the excuse is so threadbare as to make the neglect inexplicable. *Marquez v. Mineta*, 424 F.3d 539, 541-42 (7th Cir. 2005); *United States v. Guy*, *supra*, 140 F.3d at 736; *Prizevoits v. Indiana Bell Tel. Co.*, 76 F.3d 132, 134 (7th Cir. 1996). Service of process can be tricky, but the government has not much in the way of excuses for missing the deadline in this case by almost five months, if (a big if) the judge's finding that McLaughlin did not evade service is accepted; and though we are skeptical, we do not think the finding clearly erroneous and so we accept it as a premise of our consideration of the appeal. So if McLaughlin was not trying to evade service, why did it take the government nine months to serve him? Why did "budgetary considerations" induce the government's lawyer to have service attempted by someone who apparently didn't know Rule 4, yet not prevent the subsequent hiring of professional process servers in the same case?

It is a nice question whether only the government's first motion for an extension should be considered untimely, or the second and third as well since they too

(obviously) were filed after the 120-day period had elapsed. We need not decide, since, as we have said, we do not consider excusable neglect the test for extending the deadline for service. This case is a good example of the wisdom of Rule 4(m) in allowing a judge to excuse a delay in service even if the plaintiff has no excuse at all. Since McLaughlin admits liability, he could not be prejudiced by having to defend a case that might have become harder to defend by passage of time, for example because of the death or fading memory of defense witnesses. *Boley v. Kaymark*, 123 F.3d 756, 758 (3d Cir. 1997). Anyway he received a copy of the complaint within the 120-day period—probably two copies; almost certainly his daughter showed him the ominous document that the IRS officer had left with her addressed to him. He knew he'd been sued, and armed with that knowledge he could begin his defensive efforts if he wished to contest liability—which he did not. He could not have been prejudiced to even the slightest extent by the government's service fumbles.

When delay in service causes zero prejudice to the defendant or third parties (or the court itself), the granting of extensions of time for service, whether before or after the 120-day period has expired, cannot be an abuse of discretion. *United States v. 2,164 Watches, More or Less, Bearing a Registered Trademark of Guess?, Inc.*, *supra*, 366 F.3d at 773; *Coleman v. Milwaukee Board of School Directors*, *supra*, 290 F.3d 932, 934. The icing on the cake is that the suit if dismissed could not be reinstated, the statute of limitations having expired five days after the complaint was filed, see *Panaras v. Liquid Carbonic Industries Corp.*, 94 F.3d 338, 341 (7th Cir. 1996); *Horenkamp v. Van Winkle & Co.*, *supra*, 402 F.3d at 1133; *Mann v. American Airlines*, 324

F.3d 1088 (9th Cir. 2003); Committee Note, *supra*, and the defendant having admitted liability, dismissal would have presented him with a windfall—and a big one. It would have amounted to fining the government $3 million for doing something that did no harm to anyone and handing over the proceeds of the fine to a wrongdoer.

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*