In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-3301

MARIA CARDENAS, et al.,

*Plaintiffs-Appellants*,

*v.*

CITY OF CHICAGO, a municipal corporation, and
ALEJANDRO GALLEGOS, a Chicago Police Officer,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08 C 3174—**Charles R. Norgle, Sr.**, *Judge.*

ARGUED JUNE 8, 2011—DECIDED JULY 20, 2011

Before POSNER, KANNE, and HAMILTON, *Circuit Judges*.

KANNE, *Circuit Judge*. Chicago police officer Alejandro Gallegos led a team of officers in executing a search warrant at the apartment of Maria Cardenas, Evanhido Cardenas, and Natalia Barron (the "Plaintiffs"). The officers entered the apartment, without knocking and announcing their presence, and then handcuffed and harshly handled the residents. The residents subsequently

sued the City of Chicago and Officer Gallegos, bringing three state-law and two federal claims based on the allegedly unlawful search. They did not properly serve Officer Gallegos with process, however, and he moved to dismiss the complaint against him more than 360 days after service was due. The district court granted his motion to dismiss, finding that the single attempt at service was inadequate, that no good cause for the failure was shown, and that an extension was not warranted by the circumstances. It then dismissed the City, as the City could not be held liable under Illinois law without the officer's presence in the suit. We affirm.

## I. BACKGROUND

Officer Gallegos obtained a search warrant for the residence of Maria Cardenas, Evanhido Cardenas, and Natalia Barron, authorizing officers to search the apartment for a wanted individual, narcotics, money, and drug paraphernalia. The team of officers, led by Officer Gallegos, entered the apartment on December 14, 2007, without knocking or announcing their presence. The warrant did not authorize this procedure. According to the complaint, each of the Plaintiffs was in the residence, threatened with firearms, and restrained against his or her will. The Plaintiffs allege that the officers searched recklessly, destroying some belongings and damaging the apartment itself. The officers left empty-handed, having found no person or object described in the warrant.

Believing the officers' conduct violated their rights, the Plaintiffs sued Officer Gallegos and the City of

Chicago in state court on April 22, 2008, alleging unlawful execution of a search warrant, assault, battery, and a federal count of unlawful search and seizure. The Plaintiffs attempted to serve both defendants on May 9, 2008, through the Cook County Sheriff. The Sheriff successfully served the City, but Officer Gallegos's summons—which the Plaintiffs had directed to the Chicago Police Department ("CPD") Headquarters, care of the Superintendent—was returned unserved on May 12, 2008.

The City removed the case to federal court on June 2, 2008.[1] The removal notice stated that Officer Gallegos had not yet been served. Counsel for the Plaintiffs then called CPD on June 19, 2008, and asked how to properly serve a CPD officer. Counsel undertook no further service-related effort until November 12, 2008, when he sent a letter to the City's counsel requesting that the City waive service for Officer Gallegos or that it at least provide Officer Gallegos's current address. The two counsel spoke on December 17, 2008, and they dispute the contents of the telephone conversation: the City alleges that it described how the CPD Office of Legal Affairs facilitates the service of an officer, but Plaintiffs' counsel claims that no mention of insufficient service was made. They agree, however, that the City indicated it lacked the authority to waive service on Officer Gallegos's behalf and that it withheld his

---

[1] Officer Gallegos neither participated in nor objected to the removal.

address due to policies regarding officer safety and privacy.

The City and Officer Gallegos jointly moved to dismiss the suit on September 28, 2009.[2] They first argued that, because Officer Gallegos had never been served, the complaint against him must be dismissed under Rule 12(b)(5). The motion noted that the CPD's Office of Legal Affairs was the appropriate entity to facilitate personal service on Officer Gallegos. They then argued that the complaint against the City must be dismissed under Rule 12(b)(6) because the state's Tort Immunity Act would not support municipal liability resulting from an officer's act where the officer himself was not liable.

The Plaintiffs opposed the motions, claiming that their attempt to serve Officer Gallegos through the Superintendent was sufficient and that the City counsel's stated settlement intentions led them to believe further service attempts were unnecessary. While the motions to dismiss were pending, the Plaintiffs obtained an alias summons for Officer Gallegos on October 14, 2009. Their counsel served the summons through CPD's Office of Legal Affairs on November 9, 2009, approximately 525 days after the suit was removed.

The district court granted the joint motion to dismiss. It first determined that the Plaintiffs had not properly served Officer Gallegos within the 120-day limit established by Rule 4(m). It also determined that the Plain-

---

[2] The City's counsel entered an appearance on Officer Gallegos's behalf when it filed the joint motion.

tiffs lacked good cause for the failed service and declined to grant a discretionary extension. The district court then determined that, without Officer Gallegos in the suit, liability would not lie against the City. It dismissed the Plaintiffs' suit with prejudice on February 15, 2010. The district court subsequently denied the Plaintiffs' motion to alter or amend the judgment, in which they argued that the court had not considered all of the appropriate factors in its extension decision.

## II. ANALYSIS

The Plaintiffs now appeal the dismissal of their suit, presenting two issues for our review. First, they contend that the district court erred in granting Officer Gallegos's motion to dismiss pursuant to Rule 12(b)(5). They argue that they successfully served Officer Gallegos within the allotted time and that—if we find they did not—the district court erred in denying them an extension during which they could perfect service. Second, they contend that if we conclude the district court erred in its service of process determinations, we must reverse its grant of the City's motion to dismiss pursuant to Rule 12(b)(6) and reinstate their claims against the City. We do not reach and express no opinion on their second issue, as it is clearly conditioned upon our determination regarding their first issue.

After commencing a federal suit, the plaintiff must ensure that each defendant receives a summons and a copy of the complaint against it. Fed. R. Civ. P. 4(b), (c)(1). Unless the plaintiff can demonstrate good cause for being

unable to do so, she must accomplish this service of process within 120 days of filing to avoid possible dismissal of the suit. Fed. R. Civ. P. 4(m). The same 120-day period applies where suits are removed to federal court from state court, except that the period commences upon the date of removal. *See* Fed. R. Civ. P. 81(c)(1); *Romo v. Gulf Stream Coach, Inc.*, 250 F.3d 1119, 1122-23 (7th Cir. 2001); *Wallace v. Microsoft Corp.*, 596 F.3d 703, 706 (10th Cir. 2010). These service requirements provide notice to parties, *see Henderson v. United States*, 517 U.S. 654, 672 (1996), encourage parties and their counsel to diligently pursue their cases, *see Geiger v. Allen*, 850 F.2d 330, 331 (7th Cir. 1988), and trigger a district court's ability to exercise jurisdiction over a defendant, *see United States v. Ligas*, 549 F.3d 497, 500 (7th Cir. 2008).

A defendant may enforce the service of process requirements through a pretrial motion to dismiss. Fed. R. Civ. P. 12(b)(5). The plaintiff bears the burden to demonstrate that the district court has jurisdiction over each defendant through effective service. *See Homer v. Jones-Bey*, 415 F.3d 748, 754 (7th Cir. 2005). If, on its own or on the defendant's motion, the district court finds that the plaintiff has not met that burden and lacks good cause for not perfecting service, the district court must either dismiss the suit or specify a time within which the plaintiff must serve the defendant. Fed. R. Civ. P. 4(m). As the text of the rule indicates, the decision of whether to dismiss or extend the period for service is inherently discretionary, *Ligas*, 549 F.3d at 501, and we will review the district court's judgment only for abuse of that discretion. *Coleman v. Milwaukee Bd. of Sch. Dirs.*, 290 F.3d

932, 934 (7th Cir. 2002); *Kurka v. Iowa Cnty., Iowa*, 628 F.3d 953, 957 (8th Cir. 2010).

### A. Insufficient Service of Process

The Plaintiffs first argue that the district court erred in its consideration of their initial attempt to serve Officer Gallegos. They contend that they had properly served Officer Gallegos on May 9, 2008, and that we should reinstate their claims accordingly. We review *de novo* the district court's determination regarding the sufficiency of the Plaintiffs' service of process. *See uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423-24 (7th Cir. 2010); *Williams v. Leach*, 938 F.2d 769, 771 (7th Cir. 1991).

The Plaintiffs' contention that they properly served Officer Gallegos within 120 days as required by Rule 4(m) lacks merit. Their asserted belief that they properly served Officer Gallegos on May 9, 2008—as well as their incredible claim that "[i]t was only upon being served with Defendant's Motion to Dismiss" that they realized that their attempt was "supposedly deficient"—is flatly belied by (1) the return of the summons three days later marked as not served, (2) their post-removal inquiry regarding the proper means of service, and (3) their request for the city to waive service on Officer Gallegos's behalf. They nevertheless argue, unconvincingly, that the Superintendent is the de facto head of the Office of Legal Affairs and that serving the summons on the Super-intendent's office was essentially the same as giving it to the Office of Legal Affairs. They also complain about the difficulty of serving police officers in general. But

neither point explains how their attempt at service complied with either the state or federal rules.

Perhaps the Plaintiffs believe that offering the summons to another office on the same floor as the correct office *should* suffice, and thus wish us to deem their singular attempt valid. Whether such an effort *should* arguably be effective has no bearing on whether it *was* legally sufficient. Because this attempt at service occurred before the case was removed, Illinois service of process rules govern whether the attempt was legally sufficient. *Allen v. Ferguson*, 791 F.2d 611, 616 n.8 (7th Cir. 1986). Under Illinois law, serving an individual's employer or other putative agent is not sufficient for service on the individual. *See* 735 Ill. Comp. Stat. 5/2-203. Even if the Federal Rules of Civil Procedure applied to this singular attempt at service, the Plaintiffs have not shown that the Superintendent was an authorized agent to receive service of process on Officer Gallegos's behalf. *See* Fed. R. Civ. P. 4(e)(2)(C). Accordingly, the district court did not err in determining that the Plaintiffs had not served Officer Gallegos within the 120-day period.

## B. *Denial of Extension*

Despite knowing that the summons for Officer Gallegos was returned unserved, the Plaintiffs undertook no service-related efforts until well after the 120-day deadline had passed. Perhaps because of this unexplained lapse, they renounce any argument that they had good cause for their lack of service and that they were entitled to the

resulting compulsory extension. *See* Fed. R. Civ. P. 4(m); *Panaras v. Liquid Carbonic Indus. Corp.*, 94 F.3d 338, 340 (7th Cir. 1996). Instead, the second prong of the Plaintiffs' argument is that the district court erred in its refusal to grant them a discretionary extension of time in which to serve Officer Gallegos. They allege that the district court abused its discretion because it failed to take the relevant factors into consideration and because the balance of hardships militated an extension. They ask us to reverse its decision and reinstate their claims now that Officer Gallegos has been served with process.

The district court declined to extend the deadline for service and chose instead to dismiss the claims against Officer Gallegos. In doing so, it acknowledged that the expiration of the statute of limitations would bar refiling of the suit, but correctly noted that this factor alone neither required nor justified an extension. *See Panaras*, 94 F.3d at 341; *Kurka*, 628 F.3d at 959. The district court ultimately determined that the fault for the profound delay rested squarely on Plaintiffs' counsel's shoulders: "Counsel made no other attempts at service, though it should have been aware that it would face serious consequences if it ultimately failed to serve an essential party. The Court sees no reason to allow Counsel more time to accomplish what it should have done several months ago." *Cardenas v. City of Chicago*, 2010 WL 610621, at *5 (N.D. Ill. Feb. 15, 2010).

On appeal, the Plaintiffs argue that the district court was required to balance the parties' hardships in exercising its discretion by considering five factors they

distill from various cases: (1) whether the expiration of a statute of limitations during the pending action would prevent refiling, (2) whether the defendant evaded service, (3) whether the defendant's ability to defend would be prejudiced by an extension, (4) whether the defendant had actual notice of the lawsuit, and (5) whether the defendant was eventually served. The Plaintiffs are correct that district courts should consider the relative hardships of the parties in arriving at its discretionary choice between dismissal and extension of time. *See Coleman*, 290 F.3d at 934; *Zapata v. City of New York*, 502 F.3d 192, 197 (2d Cir. 2007). Rule 4(m) does not specify which factors the district court must consider in exercising its discretion, *see United States v. McLaughlin*, 470 F.3d 698, 700 (7th Cir. 2006) (noting that the rule "specifies no criteria for the exercise of mercy"), but the Plaintiffs correctly identify some factors that the district court may consider in its decision. *See, e.g.*, *Coleman*, 290 F.3d at 934 (harm to defendant's ability to defend, receipt of actual notice, expiration of statute of limitations); *McLaughlin*, 470 F.3d at 701 (evasion of service, admission of liability, windfall to defendant); *Troxell v. Fedders of N. Am., Inc.*, 160 F.3d 381, 383 (7th Cir. 1998) (actual notice and eventual service). Yet the Plaintiffs propose only those factors they believe favor their chances of securing an extension, overlooking other acceptable considerations—such as whether they ever requested an extension from the court due to difficulties in perfecting service (they did not) and whether they diligently pursued service during the allotted period (they did

not). Further, even if the balance of hardships appears to favor an extension, the district court retained its discretion to hold the Plaintiffs accountable for their actions—or, more accurately, inaction—by dismissing the case. *Coleman*, 290 F.3d at 934.

A district court should, of course, consider the arguments and factors advanced by the plaintiff, *see id.*, and it should pay particular attention to a critical factor such as the running of a statute of limitations, *see Panaras*, 94 F.3d at 341. But while we encourage courts to do so as a matter of practice, no authority requires a district court to explain on the record its detailed reasoning for each plaintiff-proposed factor. And certainly nothing forbids its consideration of factors plaintiffs tellingly ignore. The district court's order in this case does not show its explicit consideration of all the potentially applicable factors, but the order specifically addresses the statute of limitations and rejects it as a basis for extension under the circumstances. The district court also notes those factors it regarded as dispositive: Plaintiffs' lack of diligence, a year's delay in service even after being informed of the proper method, and counsel's inaction in the face of the known serious consequences of his failure to serve an essential party. Finally, in its disposition of the Plaintiffs' motion to amend the judgment, the district court indicated it had already evaluated the factors advocated and the cases presented by the Plaintiffs in opposition to dismissal.

Ultimately, the district court recognized its discretion in applying Rule 4(m), evaluated the circumstances of

the Plaintiffs' failure to serve Officer Gallegos, and determined that the Plaintiffs' counsel had only himself to blame. If a district court "properly sets out the relevant law and makes no factual findings that are clearly erroneous, an abuse of discretion exists only if its decision was arbitrary and unreasonable." *Troxell*, 160 F.3d at 383. The Plaintiffs have offered us "no reason to think that the district court was completely off base" in deciding not to rely exclusively on the factors they propose. *Id.* The district court could have excused the lack of timely service, but we cannot call its choice not to grant an extension unreasonable—especially given both that Plaintiffs' counsel made no attempt to serve Officer Gallegos in the 483 days between removal and the filing of the motion to dismiss and also that another 42 days elapsed before counsel finally served the Office of Legal Affairs. Indeed, it strikes us as eminently reasonable to hold the Plaintiffs accountable for their unexplained inaction in the face of their crucial burden to timely serve Officer Gallegos with process. We conclude that the district court did not abuse its discretion by granting Officer Gallegos's motion to dismiss.

## C. *Dismissal without Prejudice*

Before closing, we must address one final aspect of the district court's order. A dismissal pursuant to a Rule 12(b)(5) motion ordinarily should be entered without prejudice. S*ee* Fed. R. Civ. P. 4(m); *Ligas*, 549 F.3d at 501. The district court, however, dismissed the claims against Officer Gallegos with prejudice based on the

fact that the applicable statute of limitations had expired while the case was pending. *Cardenas*, 2010 WL 610621, at *5. The Plaintiffs argued for the first time at oral argument that its order was inconsistent with Rule 4(m)'s clear "without prejudice" requirement.

Both the district court and the Plaintiffs correctly recognize that any refiled suit would be time-barred. That bar effects a result similar to a dismissal with prejudice: "[I]f the statute of limitations has meanwhile expired it will be the limitations defense that greets [any] new action, which will make the case just as dead as a disposition on the merits . . . ." David Siegel, Practice Commentary on Fed. R. Civ. P. 4, C4-38, reprinted at 28 U.S.C.A. Fed. R. Civ. P. 4 at 211 (West 2008). And in similar circumstances, we previously noted that dismissal with prejudice was appropriate where the plaintiff did not meet Rule 4(m) and where the statute of limitations expired during the federal case. *Conover v. Lein*, 87 F.3d 905, 908 (7th Cir. 1996). Accordingly, we find no error in the district court's dismissals.

### III. CONCLUSION

The Plaintiffs did not serve Officer Gallegos with process within the time allotted by the Federal Rules of Civil Procedure. Because the district court did not abuse its discretion in declining to extend the period in which the Plaintiffs could serve him, we AFFIRM its dismissal of the Plaintiffs' suit.