**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 26, 2012[*]
Decided August 6, 2012

**Before**

RICHARD A. POSNER, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 11-1230

| | |
|---|---|
| FABIAN SANTIAGO, <br> *Plaintiff-Appellant,* | Appeal from the United States District <br> Court for the Southern District of Illinois. |
| *v.* | No. 05-CV-00512 |
| JEREMY ANDERSON, et al., <br> *Defendants-Appellees.* | Michael J. Reagan, *District Judge*, and <br> Donald G. Wilkerson, *Magistrate Judge*. |

**O R D E R**

Fabian Santiago, an Illinois prisoner, filed this lawsuit under 42 U.S.C. § 1983 seven years ago. His July 2005 complaint joins defendants and claims related only by speculation of a grand conspiracy to harass him, and is the archetype of unwieldy prisoner litigation that should be met either by dismissing improperly joined defendants or carving the case into separate lawsuits. *See Wheeler v. Wexford Health Sources, Inc.*, — F.3d —, 2012 WL 2999967, at *2 (7th Cir. July 23, 2012); *Owens v. Hensley*, 635 F.3d 950, 952 (7th Cir. 2011);

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

*George v. Smith*, 507 F.3d 603, 606–07 (7th Cir. 2007). The district court instead parsed eight claims from Santiago's pro se complaint. He has never contested that reading, which we accept as well. All the defendants but one were dismissed before trial, some at initial screening, *see* 28 U.S.C. § 1915A, and others at summary judgment. The last defendant prevailed at trial. (A magistrate judge conducted that trial by consent, *see* 28 U.S.C. § 636(c), though a district judge had issued the rulings at screening and summary judgment. For simplicity, we use "district court" throughout.) Santiago challenges the jury's verdict as well as the earlier dismissals of his claims against the other defendants. With two exceptions, we uphold the district court's judgment.

The first two counts of Santiago's complaint derive from an alleged assault at Menard Correctional Center on July 18, 2003. Santiago claims in Count I that Sergeant David Childers branded him a "trouble maker" and punched and kicked him in the head and torso because he asked not to be housed with an enemy. This assault, Santiago alleged, left him with severe head injuries, cuts, and bruising. Another guard, Jeffrey Mitchell, not only failed to intervene, but aided Childers by cuffing Santiago's hands mid-assault and then stepping aside as the sergeant resumed throwing punches. Santiago's wounds were cleaned by medical personnel, first at Menard and then again at Pontiac Correctional Center where Santiago was transferred the same day. But he claims in Count II that doctors and infirmary staff gave him no pain medication at Menard and, although he experienced excruciating pain and sleeplessness for a month, dispensed only Tylenol twice daily for four days at Pontiac. At screening the district court allowed the claim against Childers and Mitchell to proceed but concluded that Santiago's allegations of callous indifference to his pain do not state a claim for deliberate indifference to a serious medical need. We are skeptical of the latter conclusion, *see Gomez v. Randle*, 680 F.3d 859, 865–66 (7th Cir. 2012); *Smith v. Knox County Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012), but we need not discuss this claim further because Santiago named as defendants only a pair of never-identified "John Doe" physicians, which did nothing to forestall the running of the two-year statute of limitations long before the judge screened his complaint in September 2006, *see* 735 ILCS 5/13–202; *Gomez*, 680 F.3d at 864 n.1; *Jackson v. Kotter*, 541 F.3d 688, 698–99 (7th Cir. 2008).

The third count of Santiago's complaint accuses three other guards, Robert Smithson, Jeremy Anderson and Joel Starkey, of assaulting him at Pontiac on July 24 and 25, shortly after his transfer. According to Santiago, on the first of those days Smithson—a friend of Sergeant Childers—pushed his face and body into the cement floor of his cell while Anderson twisted his ankles. He was then locked in his cell with his hands still cuffed behind his back. When he followed orders and extended his arms through the "chuckhole" so the cuffs could be removed, Smithson and Anderson instead pulled on his hands and arms. The two laughed while Santiago screamed in pain and Starkey stood watching. The next day, after Santiago had reported the incident to the warden, Starkey allegedly returned

to his cell, again gratuitously yanked his hands and arms through the chuckhole while placing Santiago in handcuffs, and later threw him to the floor of his cell after parading him around the cellblock and warning him to stop complaining. The district court also allowed this count to proceed past initial screening.

Count IV of Santiago's complaint relates to the initial assault at Menard. After that incident Sergeant Childers and Correctional Officer Mitchell had each written what Santiago says is a trumped-up disciplinary report; Childers accused Santiago of punching *him* in the face, and Mitchell said that Santiago had disobeyed a direct order to "cuff up." On July 28, 2003, an Adjustment Committee at Pontiac conducted a disciplinary hearing on Childers' assault allegation. The committee, which afterward reported that Santiago had refused to attend, substantiated the accusation and, in addition to imposing lesser sanctions, revoked a year of good time. Santiago contends that Lieutenant Benjamin Dallas, the committee chairman, denied him due process by conducting the hearing without notice; Santiago insists he first learned about the proceeding on July 30 when he defended Mitchell's separate disciplinary report alleging disobedience. Lieutenant Dallas also presided over that second hearing, and Santiago claims he was denied due process again, this time because Dallas wouldn't allow him to speak, question witnesses, or otherwise present a defense. For the disobedience violation Santiago was confined to segregation, demoted to "C Grade" status, and stripped of privileges, all for three months.

At screening the district court dismissed this count with prejudice for failure to state a claim. The court apparently accepted as true that Santiago had declined to attend the first disciplinary hearing and, on that basis, concluded he was not denied due process. As for the second disciplinary hearing, the court reasoned that Santiago did not have a constitutionally protected liberty interest in avoiding three months of segregation or in retaining the lost privileges, and thus could not have been deprived of due process. *See Marion v. Radtke*, 641 F.3d 874, 875–76 (7th Cir. 2011); *Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005); *Hoskins v. Lenear*, 395 F.3d 372, 374–75 (7th Cir. 2005); *Thomas v. Ramos*, 130 F.3d 754, 762 n.8 (7th Cir. 1997); *Whitford v. Boglino*, 63 F.3d 527, 533 & n.7 (7th Cir. 1995). Sanctions imposed for separate disciplinary charges must be evaluated independently, *Pearson v. Ramos*, 237 F.3d 881, 886 (7th Cir. 2001), and Santiago does not contest the district court's conclusion that the second hearing did not implicate a liberty interest. On the other hand, the court should not have credited the committee's representation that Santiago declined to attend the first disciplinary hearing; Santiago has disputed, not endorsed, that representation. *See Carroll v. Yates*, 362 F.3d 984, 986 (7th Cir. 2004); *Powers v. Snyder*, 484 F.3d 929, 932 (7th Cir. 2007). Yet that error has little significance because, as the defendants argued in the district court, the loss of good time must be challenged in an action under 28 U.S.C. § 2254, not a suit under § 1983, *Edwards v. Balisok*, 520 U.S. 641, 648 (1997). (*Edwards* and *Heck v. Humphrey*, 512 U.S. 477 (1994), wouldn't necessarily stop Santiago from pressing his excessive-force claim even

while the disciplinary committee's finding that he assaulted Childers remains intact, *see Moore v. Mahone*, 652 F.3d 722, 723–25 (7th Cir. 2011); *Gilbert v. Cook*, 512 F.3d 899, 901–02 (7th Cir. 2008), but *Edwards* and *Preiser v. Rodriguez*, 411 U.S. 475 (1973), do preclude Santiago from using § 1983 to raise a due process challenge to the *committee's decision*, which is the premise of Count IV, *see Edwards*, 520 U.S. at 643–48.) A dismissal under *Edwards* is without prejudice, so we modify the judgment accordingly and dispatch Santiago's due process claim against Lieutenant Dallas.

The fifth count of Santiago's complaint alleges that Correctional Officer Anderson—the same Anderson named in Count III—violated the Eighth Amendment by deliberately confining him in a cell furnished with a urine-drenched mattress and covered in excrement. Santiago lived in these conditions for two months because Anderson allegedly refused his requests to change cells and would not provide a substitute mattress or cleaning supplies. This claim likewise survived screening.

Count VI alleges that on September 18, 2003, Smithson and another guard ransacked his cell during a general search of the cellblock, and that Smithson—Sergeant Childers' friend—warned that assaulting "one of mine" would be met in kind. This conduct, Santiago claims, constituted an illegal search. At screening the district court rightly rejected this theory, since prisoners have no expectation of privacy in their cells. *Hudson v. Palmer*, 468 U.S. 517, 526 (1984).

Count VII reflects Santiago's accusation that the warden and other administrators at Pontiac mishandled or ruled incorrectly on grievances he submitted on August 13 and 29, 2003. Those grievances concern the alleged assaults at both Menard and Pontiac, and Santiago speculates that he did not receive favorable decisions because the named decision makers want to thwart future litigation. Santiago concludes that he was denied due process, but the district court properly rejected that theory and dismissed this count at screening for failure to state a claim. *See Grievson v. Anderson*, 538 F.3d 763, 772 (7th Cir. 2008); *Antonelli v. Sheehan*, 81 F.3d 1422, 1430 (7th Cir. 1995).

Last, in Count VIII, which supplies the thread linking Santiago's claims, he alleges that the assault by Childers and Mitchell spurred "a chain" of retaliation encompassing every incident and defendant mentioned elsewhere in the complaint. At screening the district court read this count charitably and allowed it to proceed against a few of the defendants (who, except for Anderson, later prevailed at summary judgment on the ground of failure to exhaust administrative remedies, *see* 42 U.S.C. § 1997e(a)). Yet Santiago's premise—that every ill befalling him must be retaliatory because everyone knows him to be litigious and a frequent correspondent with the grievance officer—falls short of stating a claim even under notice pleading. *See Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009);

*Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008). This claim should have been dismissed at the outset in its entirety, and we see nothing in Santiago's appellate brief suggesting disagreement with this conclusion.

So on appeal we are concerned only with Santiago's claims that he was subjected to excessive force, first at Menard by Sergeant Childers and Correctional Officer Mitchell (Count I), and later at Pontiac by Correctional Officers Smithson, Anderson, and Starkey (Count III). We also have before us Santiago's claims that Anderson confined him in a cell under conditions that violated the Eighth Amendment (Count V), and that he did so, as with his other actions, to retaliate for Santiago's purported assault against Sergeant Childers (Count VIII). In late September 2006 the district court directed service on these defendants. *See* 28 U.S.C. § 1915(d). The Marshals Service located the other defendants, but Sergeant Childers had been called to active military duty and sent to Iraq. His absence initially was disclosed through correspondence from Menard to the Marshals Service in October 2006, and in July 2007 a deputy marshal filed with the court the unexecuted summons for Childers with the notation that he was on military leave "until 2008" and that his wife had said on July 3 that she "would not see him for an indeterminable amount of time." After that, as far as this record shows, the Marshals Service took no further action, and a magistrate judge rejected Santiago's requests for help in compelling Childers' wife to disclose his address in Iraq. Eventually the magistrate judge concluded that further extensions of the deadline for service would be pointless because Childers no longer lived at his home in Illinois and the court did not know his foreign location. *See* FED. R. CIV. P. 4(e)(2)(B), (f). The magistrate judge asserted that trying to learn Childers' location in Iraq "would be for naught" and declared that expecting the Marshals Service to serve a military member in Iraq would be unreasonable. On November 30, 2007, the district court accepted that view and dismissed the complaint without prejudice as against Childers. Santiago filed a motion for reconsideration—which was ignored by the assistants attorney general representing the Menard employees—and in May 2008 the court denied Santiago's motion with the explanation that Santiago had not provided any new information about Childers. Santiago would not be harmed, the court declared, because the statute of limitations would be tolled during Childers' military service. *See* 50 U.S.C. App. § 526. In fact, however, Childers had returned to Illinois in late December and resumed his job at Menard on January 4. And the Attorney General's office knew as much: Childers also was a defendant in another lawsuit pending in the Southern District of Illinois, and on January 14 the assistant attorney general assigned to that case had informed the presiding judge that Childers had returned to his job. *See Carter v. Hecht*, No. 02-CV-1015-DRH, 2008 WL 597223, at *3 (S.D. Ill. Feb. 29, 2008) (Document 110).

After lengthy discovery the defendants moved for summary judgment on the remaining claims. The district court (adopting the recommendation of a magistrate judge)

agreed with Mitchell, Smithson, Anderson, and Starkey that Santiago had failed to exhaust his administrative remedies on the excessive-force claims and thus dismissed Counts I and III without prejudice. *See* 42 U.S.C. § 1997e(a). But as to Anderson, who did not raise a nonexhaustion defense, the court concluded that Santiago had presented enough evidence for a jury to find in his favor on the Eighth Amendment and retaliation claims (Counts V and VIII). These claims, the court reasoned, essentially turned on witness credibility. Santiago and Anderson consented to trial before a magistrate judge, and during that proceeding Anderson testified that he did not recall Santiago, had never seen any complaints or grievances from him, and in September 2003 would have been following Pontiac policies concerning cell cleanliness. Anderson also cross-examined Santiago about his convictions for murder, attempted murder, and aggravated battery. The jury found for Anderson.

As a preliminary matter, we reject the defendants' contention that the dismissal of Sergeant Childers without prejudice means that the judgment lacks the finality essential for us to exercise subject-matter jurisdiction under 28 U.S.C. § 1291. We have explained repeatedly that dismissal without prejudice (the presumptive result for a failure to serve process, at least domestically, *see* FED. R. CIV. P. 4(f); *Cardenas v. City of Chicago*, 646 F.3d 1001, 1008 (7th Cir. 2011)) does not undermine the finality of a decision if the district court has made clear, as is true here, that it is "finished with the case." *Hill v. Potter*, 352 F.3d 1142, 1144–45 (7th Cir. 2003); *see Ennenga v. Starns*, 677 F.3d 766, 772 (7th Cir. 2012); *Mostly Memories, Inc. v. For Your Ease Only, Inc.*, 526 F.3d 1093, 1097 (7th Cir. 2008); *Doss v. Clearwater Title Co.*, 551 F.3d 634, 639 (7th Cir. 2008); *Taylor-Holmes v. Office of Cook County Public Guardian*, 503 F.3d 607, 609–10 (7th Cir. 2007). It does not matter that another suit against Childers is possible; if the lawsuit before the court is finished for good, the prospect of further "litigation in some form . . . does not deprive a judgment of finality." *Hill*, 352 F.3d at 1144; *accord Borrero v. City of Chicago*, 456 F.3d 698, 700 (7th Cir. 2006); *Chase Manhattan Mortg. Co. v. Moore*, 446 F.3d 723, 725 (7th Cir. 2006).

In his pro se appeal, Santiago first argues that the district court abused its discretion in dismissing Sergeant Childers for lack of service. He contends that his chances of effecting service were thwarted by the refusal to help him question Childers' wife about her husband's whereabouts. We agree that the district court mishandled the situation; when a plaintiff proceeds in forma pauperis, as Santiago did, the Marshals Service is required to serve process. 28 U.S.C. § 1915(d); FED. R. CIV. P. 4(c)(3); *Graham v. Satkoski*, 51 F.3d 710, 712 (7th Cir. 1995). Santiago did all that was required of him, having named Childers in the complaint, *see Sellers v. United States*, 902 F.2d 598, 602 (7th Cir. 1990); *Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996), and completed to the extent possible the necessary paperwork, *see Laurence v. Wall*, 551 F.3d 92, 94 (1st Cir. 2008); *Puett v. Blandford*, 912 F.2d 270, 275 (9th Cir. 1990); *cf. Del Raine v. Williford*, 32 F.3d 1024, 1030–31 (7th Cir. 1994). Section 1915(d) lists

no exception for defendants who are abroad, and the Marshals Service has created Form USM-94 specifically for that purpose. And though service in a foreign country may be impractical or even impossible when the defendant is trying to duck a summons, we are given no reason to believe that Childers—who still was employed at Menard and intended to return to his job—would not have accepted service voluntarily had the Marshals Service simply made an effort to contact him through his wife or his military unit; surely he was receiving mail and e-mail while in Iraq. *See Brockmeyer v. May*, 383 F.3d 798, 805–06 (9th Cir. 2004) (explaining that Rule 4(f)(3), which permits service in foreign country "as the court orders" so long as chosen method comports with international agreements, imparts broad discretion and would allow for service by regular mail and e-mail). More importantly, the Marshals Service might readily have learned from his unit when Childers' deployment was to end, and at the very least could have asked Menard for notification when Childers returned to work. As it was, the district court left Santiago without a means of serving Childers no matter whether he was in Iraq or in Illinois, and as we know now by taking judicial notice of the other lawsuit naming Childers as a defendant, *see Papasan v. Allain*, 478 U.S. 265, 268 n.1 (1986); *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012), he had been back on the job for five months before the district court cited a lack of new information *from Santiago* as reason not to reconsider the dismissal. All the while a coworker of defense counsel knew that Childers was home, and all the while the statute of limitations was running again, as it had been before the suit was filed. It is true that the two-year statute of limitations was tolled under § 526(a) during Childers' military service (how long that was we are not told), but that period necessarily expired long ago, and defense counsel's suggestion that Santiago was "not prejudiced by the dismissal because the statute of limitation was tolled" is frivolous.

This conclusion cannot help Santiago, however, because his next argument on appeal convinces us that serving Childers with the complaint simply would have led to dismissal for failure to exhaust administrative remedies. Santiago contests the dismissal of the other guards who allegedly assaulted him, but to satisfy § 1997e(a) an inmate must file a timely grievance utilizing the procedures and rules of the state's prison grievance process, including any time limitations. *See Jones v. Bock*, 549 U.S. 268, 218 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90–91, 93 (2006); *Maddox v. Love*, 655 F.3d 709, 720–21 (7th Cir. 2011); *Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005). We take a "strict compliance approach to exhaustion," meaning that the prisoner must properly use the prison's grievance system. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Because the defendants bear the burden of proving nonexhaustion, *id.* at 808, they must do more than point to a lack of evidence in the record; rather, they must establish affirmatively that the evidence is so one-sided that no reasonable fact finder could find that the plaintiff was prevented from exhausting his administrative remedies. *See Branham v. Snow*, 392 F.3d 896, 906–07 (7th Cir. 2004).

The defendants met their burden as to the July 18 assault by Childers and Mitchell at Menard (Count I). The evidence at summary judgment showed that Santiago completed a grievance form at Pontiac on August 29, 2003, in which he describes the July 18 assault at Menard and the July 24 and 25 assaults at Pontiac. The form directs inmates to send grievances involving "issues from another facility" directly to the Administrative Review Board rather than the prison's grievance officer. *See* 20 ILL. ADM. CODE § 504.870(a)(4). Santiago disregarded this instruction and submitted the form to the Pontiac grievance officer, who denied the grievance on September 23 as to the Pontiac issues and did not address the Menard issue. Pontiac's warden concurred in the denial two days later. Santiago asserts in an affidavit that he mailed the denied grievance to the review board on October 3, 2003, but by then the 60-day deadline for submitting a grievance had expired. *See id.* § 504.810(a).

In light of this evidence, Santiago did not exhaust as to the July 18 assault because officials at Pontiac were not the appropriate recipients for a grievance about that assault at Menard. Santiago maintains that lodging his grievance at Pontiac was proper because he was transferred from Menard to Pontiac on July 18, the disciplinary hearings arising from the incident at Menard were conducted at Pontiac, and, on Santiago's view, the assault at Menard was "intricately intertwined/related" to the later assaults at Pontiac. But § 504.870(a)(4) does not list any exceptions, and "when administrative procedures are clearly laid out, as in this case, an inmate must comply with them in order to exhaust his remedies." *Pavey v. Conley*, 663 F.3d 899, 905 (7th Cir. 2011). Santiago faults Pontiac officials for failing to tell him about the proper procedure, but the form itself told Santiago where to send it, and there is no evidence that he asked for help or that prison employees mislead him. *Cf. Curtis v. Timberlake*, 436 F.3d 709, 711 (7th Cir. 2006) (explaining that prison officials who "encourage, or even invite, noncompliance with written procedure" cannot turn around and cite deviations as proof of nonexhaustion). Santiago also contends that the district court erred by raising sua sponte the argument that he failed to exhaust the Menard issue by filing the grievance at Pontiac. But the court may grant a motion for summary judgment on grounds not raised by a party as long as the court gives notice and a reasonable time to respond, FED. R. CIV. P. 56(f)(2), and the court did so here because the magistrate judge raised this argument in the report and recommendation and Santiago had the opportunity to object. Finally, Santiago's grievance was late because Illinois inmates have only 60 days to file a grievance, and by his own account he did not send the grievance about the July 18 assault at Menard to the Administrative Review Board until October 3.

Santiago also failed to exhaust as to the Pontiac assault on July 25, but we reject the district court's conclusion that the defendants further established a failure to exhaust the July 24 assault. The evidence at summary judgment showed that Santiago submitted an unanswered grievance on August 13, 2003, in which he briefly describes an assault on July

24 but not on July 25: "On July 25, 2003 as I was leaving the north cellhouse to the infirmary I notified Warden Mote that on July 24, 2003 C/O Smithson and C/O Anderson assaulted me while C/O Starkey looked on. After being taken to the infirmary I was interviewed by Internal Affairs [about] . . . C/O Smithson and C/O Anderson's assault against me." Since May 2003 the grievance procedures applicable to Illinois prisons have included a particularity requirement, which provides that inmate submissions "shall contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADM. CODE § 504.810(b). At summary judgment the defendants did not argue that the August 13 grievance fails to satisfy this requirement; that contention was raised by the magistrate judge sua sponte and adopted by the district court. The defendants instead argued that the August 13 grievance did not satisfy § 1997e(a) because it says nothing about the events of July 25 and because they have no record of its receipt by the Administrative Review Board. Both points are nonsensical; the lack of information about the second Pontiac assault on July 25 does not make the grievance ineffectual as to the July 24 assault that it does describe, and of course the review board cannot find a copy because Santiago has attested that he never got a first-level response and thus had no decision to send for review. Section 1997e(a) requires inmates to exhaust only those remedies that are "available," and when prison administrators indefinitely delay acting on a grievance, they have made the administrative process unavailable. *See Hurst v. Hantke*, 634 F.3d 409, 411 (7th Cir. 2011), *cert. denied*, 132 S. Ct. 168 (2011); *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005); *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002).

The only question, then, is whether the August 13 grievance satisfies the particularity requirement. The defendants devote one line of their brief to this subject; they contend that the "description of the July 24, 2003 assault was so cursory that it did not afford the prison officials a meaningful opportunity to administratively resolve Santiago's claim." But why not? The grievance form asks for a "brief summary," not detail, and Santiago divulged the who, what, when, and where that § 504.810(b) seems to require. The defendants have not cited any legal authority—nor have we found any—interpreting the meaning of this relatively new provision. Nor have the defendants even supplied us with a copy of their current grievance procedures, so we have no idea what Illinois inmates are being told now (or what they were being told in August 2003) about the degree of detail needed in a grievance. The burden of establishing a failure to exhaust falls on the defendant, *Dole*, 438 F.3d at 809, and that burden was not met as to the July 24 assault. And since Smithson, Anderson, and Starkey did not seek summary judgment on any ground other than nonexhaustion, this claim must be remanded for trial.

We reach a different result as to the August 29 grievance. That submission includes pertinent details for both July 24 and 25, but the evidence at summary judgment establishes

that Santiago did not timely appeal to the Administrative Review Board after receiving an adverse decision on that grievance. Santiago attests by affidavit that he forwarded that grievance and the warden's response to the review board on October 3, within the 30-day time limit to appeal. 20 ILL. ADM. CODE § 504.850(a). To corroborate that assertion he supplied the district court with a record from his prison trust account indicating that on October 3 the cost of postage for legal mail had been deducted in transaction number 333461. Santiago also submitted a Certified Mail Receipt for a parcel sent to the Administrative Review Board. The defendants countered with a board member's affidavit stating that the August 29 grievance was not received until March 26, 2004, far beyond the 30-day time limit. The defendants also submitted an affidavit from a Pontiac accountant explaining that, although Santiago's trust-fund records document an expenditure for legal mail on October 3, that expenditure was debited on October 3 for a mailing actually sent on September 18. A copy of Santiago's request for payment confirms that transaction number 333461 was a postage request that was made on September 17, and that Santiago's account was charged and the mail sent the next day. Moreover, the Certified Mail Receipt bears a mailing date in January 2004, so if it does relate to the August 29 grievance, it only serves to confirm that Santiago mailed his administrative appeal too late. This evidence is so one-sided that no reasonable fact finder could conclude that Santiago submitted his August 29 grievance to the Administrative Review Board on October 3. Thus, the grant of summary judgment for the defendants was correct.

All that remain are the counts that proceeded to trial against Correctional Officer Anderson. Santiago maintains that the jury's verdict is against the manifest weight of the evidence, presumably because Anderson testified that he remembered nothing about Santiago. But after the jury returned its verdict, Santiago did not file post-verdict motions, *see* FED. R. CIV. P. 50(b), 59, and that failure forecloses any appellate challenge to the sufficiency of the evidence. *See Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 404 (2006); *Consumer Prods. Research & Design, Inc. v. Jensen*, 572 F.3d 436, 437–38 (7th Cir. 2009); *Pearson v. Welborn*, 471 F.3d 732, 738–39 (7th Cir. 2006).

Additionally, Santiago argues that the trial court should not have let Anderson elicit the specific nature of his convictions, rather than simply establish those convictions to be felonies, when impeaching his credibility. The details, says Santiago, prejudiced the jury, and Anderson's lawyer made the situation worse with repeated references to his murder conviction during closing argument. But the trial judge appropriately instructed the jury that as a convicted felon Santiago was "entitled to the same fair consideration that you would give any individual person." Santiago has not rebutted the presumption that the jury based its decision on the strength of the evidence, not his criminal history. *See Romanelli v. Suliene*, 615 F.3d 847, 854–55 (7th Cir. 2010). And while it may have been improper for Anderson's lawyer to imply that Santiago was less credible than other felons because he

stands convicted of murder, Santiago never objected to opposing counsel's closing argument and thus waived the issue. *See Lewis v. City of Chicago Police Dep't*, 590 F.3d 427, 444 (7th Cir. 2009); *Doe v. Johnson*, 52 F.3d 1448, 1465 (7th Cir. 1995).

We have considered the remaining arguments in Santiago's brief and conclude that none has merit. Accordingly, the order dismissing Santiago's claim that he was subjected to excessive force by defendants Robert Smithson, Jeremy Anderson, and Joel Starkey on July 24, 2003, is VACATED, and that claim is REMANDED for further proceedings. In addition, the dismissal of Count IV is MODIFIED to be without prejudice. In all other respects the judgment is AFFIRMED.