In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-2962

RAUL C. GOMEZ,

*Plaintiff-Appellant,*

*v.*

MICHAEL P. RANDLE, I.D.O.C. Director, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 11 C 1793—**Milton I. Shadur**, *Judge.*

ARGUED APRIL 3, 2012—DECIDED MAY 14, 2012

Before BAUER, POSNER, and KANNE, *Circuit Judges*.

KANNE, *Circuit Judge*. In a *pro se* complaint filed on
March 15, 2011, Raul C. Gomez alleged various First and
Eighth Amendment violations by the Illinois Depart-
ment of Corrections ("IDOC") and Stateville Correctional
Center prison officials under 42 U.S.C. § 1983. The district
court appointed counsel for Gomez and allowed him
to proceed *in forma pauperis*. Gomez's attorney met with
him in person on one occasion and thereafter filed a

motion to withdraw as counsel. In that motion, the attorney stated his belief that Gomez's claims were either barred by the statute of limitations or not warranted under existing law. The district court, largely relying on counsel's affirmations, granted the motion to withdraw and dismissed Gomez's case. Because we find that the district court's dismissal was premature as to all but one of the defendants, we affirm in part and reverse in part the judgment of the district court and remand for proceedings consistent with this opinion.

## I. BACKGROUND

Gomez alleges the following facts, which we assume to be true for purposes of this appeal. *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 694 (7th Cir. 2009). Gomez was an inmate at Stateville Correctional Center on May 16, 2009, when he was wounded in the right upper arm by one of the pellets fired from a 12-gauge shotgun. On that day at approximately 9:45 a.m., as Gomez waited in front of his cell (#922) to be keyed in by Corrections Officer Dunlap, a fight broke out between two unarmed inmates by the staircase near cell #926. Sergeant Palmer and Officer Dunlap attempted to break up the fight. During this effort, an unknown corrections officer with a 12-gauge shotgun fired two shots from the catwalk into the inmate population. Gomez, his cellmate, and an inmate in #923 were hit by pellets from these two shots.

After the fight was contained, Palmer and Dunlap keyed the inmates back into their cells. Gomez showed his wound, which was bruised and bleeding, to Dunlap,

who assured Gomez he would get someone to look at his arm. Dunlap returned approximately five minutes later with an unknown medical technician. The medical technician wanted to treat Gomez in the health care unit but Dunlap refused to move Gomez because the prison was on lockdown. Instead, Gomez asked the medical technician if he could be treated in his cell and she responded that she would bring him some medical supplies. The medical technician never returned with these supplies.

At approximately 2:00 p.m. that same day, Gomez saw Palmer and again requested medical supplies. Palmer believed the medical technician had already provided those supplies to Gomez, but agreed to call the medical staff again. At 5:36 p.m., the same unknown medical technician was passing out medications to inmates when she passed Gomez's cell. Gomez asked about his medical supplies and she responded that he would be okay. According to Gomez's grievance, which was attached to his complaint, the medical technician told Gomez she wanted to help him but she was told by staff security not to document any medical treatment for gunshot wounds for any of the inmates. Gomez requested her name but she merely laughed and walked away mumbling.

Realizing that no medical supplies were on their way, Gomez took it upon himself to wash his wound and excise a small smashed piece of metal from his arm. He then wrapped his wound with a torn piece of his bed sheet. Gomez asserts that he was still in pain and

bleeding at this time, so he wrote an emergency grievance to the warden.

Four days later, Gomez was treated in the health care unit. His wound was photographed, cleaned, and bandaged. Gomez also received a tetanus shot. The doctor who treated Gomez expressed concern that Gomez was not brought to the health care unit the day of his injury to prevent infection. Gomez's arm was x-rayed two days later.

A couple of weeks after receiving medical treatment, Gomez believes IDOC Director Michael P. Randle sent an internal affairs ("IA") investigator to meet with Gomez and intimidate him into dropping his grievance. The investigator searched Gomez's cell and took the shirt Gomez was wearing on the day of his injury. The investigator later returned to Gomez's cell and stated there was no proof that the hole in his shirt was caused by a shotgun pellet. He then threatened to put Gomez in segregation or have him transferred to Menard Correctional Center, where Gomez had known enemies. The investigator also asked Gomez to agree to a polygraph examination, but Gomez refused unless the medical technician and Dunlap agreed to take one as well.

Gomez was placed on transfer to Menard Correctional Center. The day prior to his scheduled transfer, Gomez told a different IA investigator named Turner that he would not pursue his grievance or file a lawsuit if he was allowed to stay at Stateville. Turner told him it was "too late." Gomez was transferred to Menard and is currently incarcerated there.

Gomez's emergency grievance was first addressed on May 21, 2009, by the warden, who determined that Gomez's condition was not an emergency because he had already been treated. Accordingly, the grievance counselor responded to Gomez's grievance on June 8, 2009, noting, "As stated by the Warden below, you have been treated by the health care unit and IA will follow up. There is no justification for any monetary compensation." (Compl. at 11.) On July 9, 2009, Grievance Officer Margaret Thompson reviewed Gomez's grievance and recommended that it be denied. This decision was approved by the Chief Administrative Officer on July 13, 2009. Gomez lacks additional documentation beyond this date because at some point he was transferred to Pontiac Correctional Center on segregation status for an unrelated incident and prison officials lost his correspondence box. He asserts that he wrote to the Administrative Review Board twice requesting a copy of their response but did not receive it.

Gomez filed suit on March 15, 2011, against IDOC Director Randle, Sergeant Palmer, Corrections Officer Dunlap, and three unknown defendants. These unknown defendants include the Stateville warden, the medical technician, and the corrections officer who fired at the inmates from the catwalk. Gomez's complaint, construed liberally, asserts claims under 42 U.S.C. § 1983 for excessive force, deliberate indifference, and retaliation in violation of the First and Eighth Amendments. Gomez requested compensatory and punitive damages from each defendant, as well as legal costs, termination, and any additional relief deemed proper by the district

court. Gomez also applied for leave to proceed *in forma pauperis* and requested legal counsel.

On March 22, 2011, the district court appointed William A. Barnett, Jr., to represent Gomez. A status hearing was held on May 10, 2011. On August 8, 2011, Barnett filed a motion to withdraw as Gomez's attorney. In that motion, Barnett stated that he had withdrawn from the active practice of law and would withdraw from the trial bar of the district court once relieved of his appointment as Gomez's attorney. Barnett also asserted that he interviewed Gomez in person, reviewed the case law under 42 U.S.C. § 1983, and believed that "Plaintiff's claims are not warranted under existing law and cannot be supported by good faith argument for extension, modification or reversal of existing law." (Mot. to Withdraw at 2.) Specifically, Barnett reported to the court:

> Plaintiff was injured by the negligent action of a correctional officer who has not been identified. He removed the pellet himself shortly thereafter. He was not given immediate medical attention by the unidentified medical technician on the cell block at the time, but he was in fact treated several days later, and has not suffered any significant aggravation of the initial wound which has since healed. None of the named defendants appear to have had any involvement in his injuries.

> The statute of limitations ran on May 16, 2011. Neither counsel nor Plaintiff were able to identify either the correctional officer who fired the shotgun or the medical technician who failed to treat

him initially prior to May 16, 2011. Accordingly, there does not appear to remain any defendant who can be found liable for Plaintiff's injury.

*Id.* The following day, the district court granted the motion to withdraw and dismissed Gomez's complaint. In doing so, the district court quoted four paragraphs of Barnett's motion, noted that under these circumstances Gomez could not meet the standards established by *Estelle v. Gamble*, 429 U.S. 97 (1976), and held, "All of that being the case, attorney Barnett's motion to withdraw is granted. Gomez does not have a viable Section 1983 claim, and this action is dismissed." (Mem. Order at 2-3.) Gomez timely appealed.

## II. ANALYSIS

We review *de novo* a district court's dismissal of a prisoner's complaint during the screening process conducted under 28 U.S.C. § 1915A. *Ortiz v. Downey*, 561 F.3d 664, 669 (7th Cir. 2009). Applying the same standard used for Rule 12(b)(6) dismissals, we construe the complaint in a light most favorable to Gomez and accept all well-pled factual allegations as true. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). Gomez's complaint asserts three claims for relief and we address each one in turn.

### A. *Excessive Force*

Gomez's first claim alleges that the unidentified corrections officer who fired two rounds from a shotgun

into the inmate population used excessive force in violation of the Eighth Amendment's ban on cruel and unusual punishment. The district court held that this claim was barred by the statute of limitations because Gomez failed to identify the unknown officer before the statute of limitations ran on May 16, 2011, exactly two years after Gomez's injury occurred.[1] Although the district court correctly noted that the statute of limitations for a § 1983 claim in Illinois is two years, *see Dominguez v. Hendley*, 545 F.3d 585, 588 (7th Cir. 2008), it failed to recognize that "the limitations period is tolled while a prisoner completes the administrative grievance process." *Walker v. Sheahan*, 526 F.3d 973, 978 (7th Cir. 2008).

In this case, Gomez filed his emergency grievance on May 16, 2009. Thus, the statute of limitations was tolled from that date until the grievance process was complete. Unfortunately, we cannot ascertain this latter date because Gomez no longer has a copy of the Administrative Review Board's final decision. Because of this uncertainty, the district court erred in dismissing Gomez's excessive force claim as untimely.

---

[1] A plaintiff's lack of knowledge about a defendant's identity is not a "mistake" within the meaning of Federal Rule of Civil Procedure 15(c) such that the plaintiff could amend his complaint outside the statute of limitations period upon learning the defendant's identity. *See Baskin v. City of Des Plaines*, 138 F.3d 701, 704 (7th Cir. 1998). Accordingly, once the statute of limitations period expires, Gomez cannot amend his complaint to substitute a new party in the place of "John Doe."

Moreover, we believe Gomez's complaint properly states a claim for relief. "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). Thus, a § 1983 plaintiff must establish that prison officials acted wantonly; negligence or gross negligence is not enough. *Harper v. Albert*, 400 F.3d 1052, 1065 (7th Cir. 2005). In this case, Gomez alleged that the unidentified officer on the catwalk fired two shotgun rounds at inmates who were not involved in the fight and located four cells away. In addition, Gomez asserts that the two inmates involved in the fight were unarmed and Dunlap and Palmer were able to break up the fight. Construing Gomez's *pro se* complaint liberally, there are enough factual allegations to infer that the unidentified officer acted maliciously in using deadly force against inmates who were not involved in the ongoing altercation. Accordingly, this claim was prematurely dismissed.

## B.  *Deliberate Indifference*

Next, Gomez asserts that prison officials were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. The district court dismissed this claim for three reasons: (1) Gomez's allegations were insufficient to meet the standard set forth in *Estelle v. Gamble*, 429 U.S. 97 (1976); (2) none of the named de-

fendants were involved in Gomez's injuries; and (3) any claim against an unnamed defendant was barred by the statute of limitations. As explained in the previous section, we reject the district court's statute of limitations rationale.

A prisoner's claim for deliberate indifference must establish "(1) an objectively serious medical condition; and (2) an official's deliberate indifference to that condition." *Arnett*, 658 F.3d at 750. Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and "either acts or fails to act in disregard of that risk." *Id.* at 751. Delaying treatment may constitute deliberate indifference if such delay "exacerbated the injury or unnecessarily prolonged an inmate's pain." *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) (*citing Estelle*, 429 U.S. at 104-05). "Even a few days' delay in addressing a severely painful but readily treatable condition suffices to state a claim of deliberate indifference." *Smith v. Knox Cnty. Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012).

We find that, at this early stage in the proceedings, Gomez's complaint asserts sufficient factual allegations to state a claim for relief under the Eighth Amendment and *Estelle*. First, Gomez has sufficiently pled that he was suffering from an objectively serious medical condition. "A medical need is considered sufficiently serious if the inmate's condition has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would perceive the need for a doctor's attention." *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011)

(internal quotation marks and punctuation omitted). The medical condition need not be life-threatening; "it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Id.* (*quoting Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010)). Here, Gomez alleges he suffered a shotgun wound and shortly thereafter experienced excessive bruising and bleeding around the wound. Gomez asserts that he was in pain and believed the wound was becoming infected. In addition, Dunlap, Palmer, and the medical technician all believed Gomez needed treatment shortly following his injury. This is enough to plead a serious medical need.

Gomez has also sufficiently alleged deliberate indifference, at least with respect to the unknown medical technician and Sergeant Palmer. The medical technician told Gomez that she would bring him medical supplies to treat his injury, but he never received these supplies. Palmer became aware of Gomez's injury while he was on rounds and, although he agreed to check on Gomez's medical supplies, there is no evidence that he carried out that promise. Thus, despite these officials' knowledge of his injuries, Gomez did not receive treatment until four days later. And even though this delay did not exacerbate Gomez's injury, he experienced prolonged, unnecessary pain as a result of a readily treatable condition. *See Smith*, 666 F.3d at 1040. We have previously upheld similar claims for relief. *See, e.g.*, *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009) (prisoner complaining of severe pain from his IV was not treated for four days); *Edwards v. Snyder*, 478 F.3d

827, 830 (7th Cir. 2007) (prisoner who dislocated his finger was not treated for two days); *Cooper v. Casey*, 97 F.3d 914, 916-17 (7th Cir. 1996) (prisoners beaten and maced by prison guards were not treated until the following day). At this stage in the proceedings, Gomez has alleged enough to establish deliberate indifference as to Palmer and the unknown medical technician. Accordingly, this claim was also prematurely dismissed.

Any claim against Corrections Officer Dunlap, however, was properly dismissed. After Dunlap first became aware of Gomez's injury, he returned approximately five minutes later with a medical technician. When the medical technician requested to take Gomez to the health care unit, Dunlap refused because the prison was on lockdown. The medical technician, in Dunlap's presence, assured Gomez that she would bring medical supplies to his cell. Dunlap and the medical technician then left the area together. These allegations do not establish that Dunlap acted or failed to act in disregard to Gomez's injury. Everything in Gomez's complaint indicates that Dunlap was not deliberately indifferent to Gomez's serious medical needs. Thus, the deliberate indifference claim against Dunlap was properly dismissed and Dunlap should no longer be a party to this case.

## C. *Retaliation*

Finally, Gomez asserts a claim of retaliation in violation of his First Amendment right to use the prison grievance system. The district court failed to address this claim

entirely in its opinion dismissing Gomez's complaint. Again, we find that Gomez's complaint properly states a claim for relief.

To prevail on his First Amendment retaliation claim, Gomez must show that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (*quoting Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)). Gomez easily satisfies all three prongs at the pleading stage.

First, Gomez alleges that he used the prison's grievance system to address his injury and the lack of treatment he received following his injury. "A prisoner has a First Amendment right to make grievances about conditions of confinement." *Watkins v. Kasper*, 599 F.3d 791, 798 (7th Cir. 2010). In addition, Gomez suffered a deprivation when he was transferred from Stateville to Menard, where he had known enemies. "[A]n act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for different reasons, would have been proper." *Howland v. Kilquist*, 833 F.2d 639, 644 (7th Cir. 1987). Moreover, it can be inferred that this punishment would likely deter future First Amendment activity. Finally, Gomez alleges that the IA investigator, sent to intimidate him by IDOC Director Randle, threatened Gomez with a transfer to Menard. Even after Gomez

indicated that he would no longer pursue his grievance or file a lawsuit if he could stay at Stateville, he was told it was "too late." No other explanation for Gomez's transfer is available at this early stage in the proceedings. Thus, we conclude from Gomez's complaint that his grievance was a motivating factor in the defendants' decision to transfer him to Menard. Because Gomez properly asserted a claim for retaliation, his complaint was prematurely dismissed.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM in part, REVERSE in part, and REMAND this matter to the district court for proceedings consistent with this opinion. Circuit Rule 36 shall apply.