NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 5, 2012[*]
Decided November 6, 2012

**Before**

ILANA DIAMOND ROVNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 12-1763

| | |
|---|---|
| JOSEPH HOBAN, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Central District of Illinois. |
| | |
| *v.* | No. 12-1038 |
| | |
| SALVADORE A. GODINEZ, et al., | James E. Shadid, |
| *Defendants-Appellees.* | *Chief Judge.* |

**O R D E R**

Joseph Hoban, an Illinois prisoner, appeals the dismissal of his suit under 42 U.S.C. § 1983. We conclude that Hoban states a claim of deliberate indifference to a serious medical need, a claim of failure to protect him from a substantial risk of serious injury, and a claim of retaliation. Thus, we vacate the judgment and remand for further proceedings.

---

[*] The appellees were not served with process in the district court and are not participating in this appeal. After examining the appellant's brief and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the appellant's brief and the record. *See* FED. R. APP. P. 34(a)(2)(C).

Because Hoban's suit was dismissed at screening, we assume for our purposes here that his allegations are true and draw all reasonable inferences in his favor. *See Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011). Hoban fears the Latin Kings gang, whose members he says have a "contract" to murder him. When he arrived at Pontiac Correctional Center in 2010, the prison placed Hoban in protective custody because members of the gang had already attacked him several times when he was at Cook County Jail and Menard Correctional Center. The next year, however, correctional officers removed Hoban from protective custody and disciplined him with segregation for 13 days because, Hoban says, the officers wanted to "teach [him] a lesson" for "writing lawsuits" against officials at Cook County Jail. The prison sees it differently: A correctional officer charged in a disciplinary report that Hoban had assaulted another inmate while in protective custody, thus warranting his removal to segregation. Hoban denied the charge, contending that the prison knows that he acted in self-defense, but a grievance officer sustained the charge.

During the 13 days that Hoban was in segregation, he needed medical attention. The water was turned off, so Hoban was forced to drink from the toilet and became severely dehydrated. Although Hoban asked for medical attention, the guards refused to get him treatment. Instead, they forced Hoban to kneel on the cell concrete for extended periods, prompting Hoban to complain that kneeling exacerbated his sciatica and that he was in severe pain from a recent surgery. One officer asked Hoban where he had surgery; when Hoban pointed to his lower right abdomen, the officer beat him in the incision area, producing more abdominal pain and blood in his urine. He again asked for medical treatment, but the officers refused until his bruises healed from the beating.

After Hoban was released from segregation, the prison refused to return him to protective custody, as further punishment for his lawsuit against officials at Cook County Jail. Terri Anderson, the prison administrator who handles requests for protective custody, ignored Hoban's pleas that he needed to return to protective custody to avoid attacks from members of the Latin Kings. In Hoban's brief to this court, he adds that he gave the prison a handwritten list naming the members of the Latin Kings at Pontiac targeting him for murder. In denying his request for protective custody, prison administrators wrote that Hoban's unprovoked assault on another inmate while previously in protective custody was "not indicative of an inmate in need of protection" and showed that he was a threat to others in protective custody. Hoban appealed that decision to the Administrative Review Board, but the Board concluded that because Hoban had not identified any particular enemies, he did not warrant protective custody. Remaining outside of protective custody, Hoban experienced significant emotional and psychological distress because he was terrified that members of the Latin Kings would attack him at any time. On appeal Hoban asserts that the gang members did, in fact, attack him after he was removed from protective custody. He is currently back in protective custody.

Hoban sued the unnamed correctional officers who ignored his need for medical treatment and the officers who, to retaliate against him for his earlier lawsuit, falsely charged him with assault in order to place him in segregation and later keep him out of protective custody. He also sued several other officials: Anderson (the administrator who denied his request for protective custody), the warden of Pontiac, the Director of the Illinois Department of Corrections, a prison grievance officer, and several members of the Administrative Review Board. He brings three claims: (1) The defendants retaliated against him for suing Cook County Jail officials by placing him into segregation and removing him from protective custody; (2) By denying his requests for protective custody, the defendants deliberately ignored a known, substantial risk that the Latin Kings would kill or seriously injure him; and (3) While he was in segregation, officers deliberately ignored his need for medical treatment. Hoban seeks compensatory damages, punitive damages, and injunctive relief requiring the prison officials to place him in protective custody.

The district court addressed only the claim for failure to protect and Hoban's request for an injunction. The court reasoned that Hoban had not designated any specific enemies at Pontiac, so "[t]o order Hoban into immediate protective custody would essentially amount to a blanket order to protect him from any unidentified enemies that may be lurking somewhere in the system." The court dismissed the suit, explaining that Hoban seeks only the injunctive relief of protective custody and that he had no likelihood of success. On appeal Hoban argues that all of his claims, including the ones not addressed by the district court, should have survived screening. We review de novo a dismissal under § 1915A for failure to state a claim. *Westefer v. Snyder*, 422 F.3d 570, 574 (7th Cir. 2005).

We begin with the first of two claims that the district court did not address—that the correctional officers retaliated against Hoban for suing jail officials. To state a retaliation claim, Hoban must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the [d]efendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (internal quotations omitted). Suing prison officials is protected activity under the First Amendment. *Lewis v. Casey*, 518 U.S. 343, 350 (1996); *Lekas v. Briley*, 405 F.3d 602, 614 (7th Cir. 2005); *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996). Hoban alleges that because he sued Cook County guards, Pontiac correctional officers falsely accused him of assaulting another inmate in order to punish him with segregation, keep him from protective custody, and leave him to face a likely violent attack. These allegations suffice to state a retaliation claim against those Pontiac correctional officers, as yet unnamed, who Hoban alleges falsely charged him with the assault.

We also agree with Hoban that his complaint states an Eighth Amendment claim against the unnamed correctional officers who denied him medical attention for his

dehydration, abdominal pain, and internal bleeding. A deliberate-indifference claim against a prison official for denying adequate medical treatment requires both a serious medical condition and the disregard of a known, substantial risk of harm to the inmate. *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994); *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). A delay of medical treatment may constitute deliberate indifference, depending on the seriousness of the condition, the officer's awareness, and the ease of providing treatment. *See Smith v. Knox County Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012); *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010). "Even a few days' delay in addressing a painful but readily treatable condition may suffice to state a claim of deliberate indifference." *Smith*, 666 F.3d at 1040; *see Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009) (state hospital employees could be liable for several-day delay in treating prisoner who complained that his IV was causing him serious pain); *Edwards v. Snyder*, 478 F.3d 827, 831–32 (7th Cir. 2007) (plaintiff who dislocated his finger and was needlessly denied treatment for two days stated a deliberate-indifference claim).

Hoban has alleged two serious, treatable conditions that officers ignored for the 13 days he remained in segregation. First, after an officer beat Hoban in the area of his recent surgical incision, he suffered abdominal pain and blood in his urine. He asked for medical treatment but the correctional officers ignored his pleas. Second, Hoban was dehydrated from the lack of water and the heat in the segregation cell, but the guards again denied him treatment. Although these are merely allegations, severe abdominal pain, blood in the urine, and dehydration are serious enough to require that officers who are aware of these problems take prompt action. *See Smith*, 666 F.3d at 1040; *Edwards*, 478 F.3d at 831–32.

Finally we turn to the one claim that the court did address—that by refusing to return Hoban to protective custody, the prison failed to protect him from a known risk of attack by members of the Latin Kings. To state a claim for failure to protect, Hoban needs to allege that (1) the prison's denial of his request for protective custody posed a substantial risk of serious harm and (2) the prison acted with deliberate indifference to that risk. *See Farmer*, 511 U.S. at 834, 837; *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008).

Although damages for "a deliberate indifference claim cannot be predicated merely on knowledge of general risks of violence," *Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir. 2000), or fear of an unrealized attack, *see Babcock v. White*, 102 F.3d 267, 270 (7th Cir. 1996), Hoban alleged more than generalized risks and fears: He asserts in his brief on appeal that he gave the prison the names of specific members of the Latin Kings who had a murder contract on him, that members of this gang had access to him outside of protective custody, that they had attacked him once before when he was out of protective custody, and that they attacked him again after Anderson denied his request for protective custody. We may consider these allegations on appeal, *Smith*, 666 F.3d at 1039, and they suffice to state a claim against the prison official who knew this information but nonetheless refused him

protective custody. *See Brown v. Budz*, 398 F.3d 904, 911–12 (7th Cir. 2005) (concluding that Caucasian detainee alleged a substantial risk by stating that another detainee had a known history and propensity of attacking Caucasians and was allowed unsupervised access to him).

We observe that the only proper defendant on this last claim is Anderson, the administrator who allegedly denied his request for protective custody despite knowing the risk of attack. Section 1983 limits liability to public employees "for their own misdeeds, and not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 595–96 (7th Cir. 2009). Hoban faults the warden and the Director of IDOC for not overruling Anderson. But top-level administrators are entitled to relegate to others like Anderson the primary responsibility for specific prison functions without becoming vicariously liable for the failings of their subordinates. *Id.* Likewise, those who review administrative decisions of others, like the prison grievance officer and the members of the Review Board whom Hoban has also sued, are not liable either. *Id.; George v. Smith*, 507 F.3d 605, 609–10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation."); *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006).

Finally Hoban moved for appointment of counsel in the district court, but the district court did not rule on the motion because it dismissed Hoban's complaint. Because we believe a remand is necessary, the district court should reevaluate Hoban's motion. We observe that because of the complex issues involved in Hoban's suit, appointment of counsel would be warranted.

The judgment dismissing Hoban's complaint is VACATED, and the case is REMANDED for further proceedings. The only remaining defendants are Anderson and the unnamed correctional officers.