NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 15, 2013[*]
Decided April 16, 2013

**Before**

JOEL M. FLAUM, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 12-3640

| | |
|---|---|
| MACKENZIE C. BURSE, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 2:12-cv-912-JPS |
| MARY KOMOROWSKI, et al., *Defendants-Appellees.* | J. P. Stadtmueller, *Judge*. |

**O R D E R**

Mackenzie Burse, a Wisconsin inmate, claims in this action under 42 U.S.C. § 1983 that a nurse, a guard, and two administrators at his prison were deliberately indifferent to his herpes infection. At screening the district court dismissed the case for failure to state a claim. *See* 28 U.S.C. § 1915A. We uphold the dismissal as against the guard and administrators but conclude that Burse states a plausible claim against the nurse.

---

[*] The appellees were not served with process in district court and are not participating in this appeal. After examining the appellant's brief and the record, we have concluded that the case is appropriate for summary disposition. *See* FED. R. APP. P. 34(a)(2)(C).

For purposes of our review, we accept as true the allegations in Burse's complaint. *See Munson v. Gaetz*, 673 F.3d 630, 631 (7th Cir. 2012). In October 2009 he noticed a rash on his hands and torso that subsided within two weeks when treated with hydrocortisone cream. But the next month a rash again developed, which prompted Burse to write the prison's healthcare unit reporting that this outbreak was more painful, had developed into open sores, had spread to his upper-left thigh and lower-right leg, and seemed to be spreading to his eyes as well. Mary Komorowski, a nurse who apparently was not involved in treating the first rash, soon returned the form with a notation at the bottom stating that Burse would be seen within two weeks. (The district court understood Burse to allege that the scheduling decision was Komorowski's.)

The rash remained, and the sores bled, itched, and oozed fluid that sometimes would coagulate and mesh with Burse's boxers. One week after submitting the medical request, Burse talked to Captain Pusich, a guard, asking if she could get him treatment for his rash. Pusich reminded him that he already had an appointment with the doctor. Burse replied that this appointment was not going to be soon enough: The rash had spread to his mouth, making it painful for him to eat and talk. Pusich took no action.

One week later Burse met with Dr. Richard Heidorn, who drew a blood sample and told Burse that the sores had allowed a fungal infection to take hold (and possibly a bacterial one as well). He prescribed selenium sulfide lotion, an antifungal, to place on the affected areas. Burse began using the lotion as instructed but found that it was painful when applied to the sores and caused them to bleed excessively.

Burse told Dr. Heidorn about the adverse reaction, but the physician did not alter his course of treatment. He did confirm, however, that the blood test was positive for herpes and prescribed an antiviral in addition to the lotion. Burse promptly wrote Jeananne Zwiers, the manager of the prison's healthcare unit. He insisted that the lotion only was making the sores worse than they were before, and drew Zwiers's attention to the warning label on the packaging: "PRECAUTIONS: General: Should not be used when acute inflamation or exudation is present as increased adsorption may occur." Zwiers answered that she was unwilling to override Dr. Heidorn's opinion but advised Burse that, if he wanted, he could stop using the lotion. Burse submitted a grievance insisting that Zwiers should have intervened. A complaint examiner recommended denying the grievance and gave it to Cynthia Thorpe, the regional nursing coordinator, for a final decision. She agreed with the examiner's recommendation and rejected the grievance. (Burses's rash eventually cleared up almost two months later but left "permanent dark spots" in some places where there had been sores.)

Burse sued Nurse Komorowski, Captain Pusich, Zwiers, and Thorpe claiming deliberate indifference to his herpes outbreak. (The absence of Dr. Heidorn from the list of defendants is not explained.) In concluding that Burse's complaint does not state a claim, the district court reasoned that Komorowski's decision to make Burse wait two weeks for treatment might have constituted deliberate indifference to some other medical conditions, but not a herpes outbreak. And the remaining defendants, the court added, could not have been deliberately indifferent by deferring to Dr. Heidorn, or in the case of Pusich, deferring to Komorowski.

On appeal Burse mostly rehashes his allegations against Nurse Komorowski, insisting that the delay was unnecessary. Reviewing Burse's complaint liberally, *see Munson*, 673 F.3d at 633, we conclude that it states a plausible case for deliberate indifference. "A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011); *see also Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012); *Gonzales v. Feinerman*, 663 F.3d 311, 314 (7th Cir. 2011). The district court's conclusion that, as a matter of law, a two-week delay in treating a herpes outbreak could not constitute deliberate indifference overlooks that outbreaks—particularly those after the first outbreak—typically last only a short amount of time (Burse's previous rash lasted two weeks and received relatively prompt attention). *See Infectious Diseases* 909 (Sherwood L. Gorbach, et al., eds., 3d ed. 2004); Stephen L. Sacks, *Genital Herpes Simplex Virus Infection and Treatment, in* CLINICAL MANAGEMENT OF HERPES VIRUSES 55, 56 (Stephen L. Sacks, et al. eds., 1995). By the court's reasoning, then, prison officials simply could ignore most herpes outbreaks. In fact, however, prompt treatment is essential because the only care available to those suffering from genital herpes is palliative, and the severity and duration of an outbreak can be reduced with the antiviral that Dr. Heidorn ultimately gave to Burse. *See Infectious Diseases*, *supra*, at 909. That is probably why the Federal Bureau of Prisons instructs their doctors to provide immediate treatment. *See* Fed. Bureau of Prisons, *Clinical Practice Guidelines—Sexually Transmitted Disease Treatment Tables* 2, *available at* http://www.bop.gov/news/.PDFs/std.pdf.

A decision to delay treatment, therefore, seems difficult to explain, particularly since the delay may also have created an opportunity for a fungal infection to take hold (or at least delayed detection and treatment of that infection). *See Infectious Diseases*, *supra*, at 908 (discussing fungal superinfection as herpes complication). Furthermore, Burse informed Komorowski that the rash seemed to be spreading to his eyes, a potentially serious development because ocular herpes infections can result in blindness. *See Infectious Diseases*, *supra*, at 1911.

Our analysis is not changed by the fact that Burse had not yet been diagnosed with herpes when Nurse Komorowski delayed treatment for his rash. Not only is it fair to assume at this stage that Komorowski reasonably would have suspected that Burse was suffering from herpes, hardly a rare disease, she might have been deliberately indifferent by leaving herself and Burse in the dark. We therefore remand for Komorowski to answer Burse's complaint.

The remaining defendants, in contrast, were properly dismissed. As administrators, Zwiers and Thorpe would have been required to take action if Dr. Heidorn was ignoring Burse, but this was not the concern Burse presented to them, and so they were free to defer to Dr. Heidorn's judgment. *See Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010); *Hayes v. Snyder*, 546 F.3d 516, 526 (7th Cir. 2008). Burse insists that they should have known that Dr. Heidorn's treatment was blatantly inappropriate because of the warning that came with the lotion, but the warning is vague—it does not identify what harm might come from using the lotion on irritated areas—and would not give Zwiers or Thorpe, neither of whom are doctors (although Zwiers is a nurse), a basis to override Dr. Heidorn's judgment. *See Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1075 (7th Cir. 2012). Indeed, treatment of superinfected herpes sores with topical antifungal agents appears to be a standard course. *Infectious Diseases*, *supra*, at 908.

The case against Captain Pusich is even weaker. She is a guard, not a member of the medical staff, and Burse acknowledges that she knew of his scheduled appointment. *See King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012). Burse does not allege that Pusich obstructed his access to the healthcare unit, nor does he allege that Pusich had any authority to overrule Nurse Komorowski's triage decision. *See Holloway*, 700 F.3d at 1075.

Accordingly, we VACATE the dismissal of Burse's complaint as against Komorowski and, as to her, REMAND the case for further proceedings. In all other respects we AFFIRM the judgment.