> **NONPRECEDENTIAL DISPOSITION**
> To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 4, 2017[*]
Decided May 5, 2017

***Before***

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 16-1246

| | |
|---|---|
| JOSEPH HOBAN, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Central District of Illinois. |
| | |
| *v.* | No. 12-CV-1038 |
| | |
| TERRI ANDERSON, et al., | James E. Shadid, |
| *Defendants-Appellees.* | *Chief Judge.* |

## O R D E R

Joseph Hoban, an Illinois prisoner, sued prison officials under 42 U.S.C. § 1983 on three claims: first, they subjected him to unlawful conditions of confinement while he was in segregation; second, they ignored his medical needs, also when he was in segregation; and third, they failed to protect him from a serious threat to his safety after

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

he left segregation. The district court granted summary judgment to the defendants. It ruled that some claims were time-barred, others were administratively unexhausted, and on another claim, he presented insufficient evidence from which a jury reasonably could find liability. We affirm the judgment in all respects.

Before Hoban arrived at Pontiac Correctional Center in September 2010, he had been injured and threatened by members of the Latin Kings gang at other prisons. At Pontiac he briefly received protective custody. About nine months after he arrived there, though, Hoban was found guilty of assaulting another inmate named Echols, who Hoban believed was a member of the Latin Kings. Hoban was punished with disciplinary segregation for six months, which took him out of protective custody.

During his first twelve days in segregation, Hoban experienced problems. He reports that his cell had feces and blood on the walls and mattress, was "stiflingly" hot, and had no running water, necessitating that he drink water from the toilet. As a result of these conditions, he says, he "broke out with some rashes" and experienced nausea, vomiting, and dehydration. Hoban suffers from bipolar disorder and depression; although he received medications for these conditions, he did not receive several of his other medications—antacids, painkillers, and medicated shampoo.

Hoban responded with his first of two grievances in this case. In this grievance he complained about his conditions of confinement, his inability to receive his medicines, and his conviction for assaulting Echols. After twelve days in this cell, Hoban was transferred to a different segregation cell, where, he said, "[e]verything worked and it was very clean." About three weeks later, Pontiac's warden, Randy Pfister, denied the grievance. Hoban appealed, but the Administrative Review Board rejected the appeal. (With this decision on September 13, 2011, Hoban exhausted his conditions-of-confinement and medical-indifference claims.)

While Hoban was still in segregation, he filed a second grievance. In it he sought to return to protective custody upon his release from segregation. The request was supported by his counselor, but the prison lieutenant who reviewed the grievance, Edward Vilt, recommended to Pfister that it be denied. Vilt reasoned that Hoban's "paranoia" created "a security concern for the other inmates housed in the [protective custody unit]" and his fight with Echols was "not indicative of an inmate in need of protection." Pfister accepted the recommendation and denied Hoban protective custody. Hoban appealed this decision to the Administrative Review Board.

Hoban did not wait for the review process for his second grievance to conclude before filing his original complaint in this suit, which principally raised failure-to-protect claims. He alleged that, by denying him protective custody, Pfister and other named prison administrators were deliberately indifferent to his safety. The district court screened the complaint under 28 U.S.C. § 1915A(b)(1) and dismissed it. Hoban appealed, and we vacated the judgment because he had pleaded plausible claims, overlooked by the district court, against unnamed correctional officers. *See Hoban v. Godinez*, No. 12-1763, 2012 WL 5395186, at *2–3 (7th Cir. Nov. 6, 2012). We also ruled that, since he alleged that Latin King members attacked him after he gave a named defendant (Terri Anderson) a list of their names, his claim against her could go forward. *See id.* at *3–4.

Hoban meanwhile finished pursuing at the prison the exhaustion of his second grievance, which had raised his failure-to-protect assertions. At his hearing before the Administrative Review Board, he gave the Board's chairperson, Sherry Benton, a list of names of Latin King inmates who, he said, "tried to murder" him and photos of his "bloody" body after he had been attacked by Latin King members at Cook County Jail. Benton nonetheless recommended to Anderson that she uphold the denial of Hoban's grievance requesting protective custody. As Benton explained, Hoban had no declared enemies on file; no other prisoners had declared him an enemy; Pfister had not found "sufficient verifiable information to warrant Protective Custody placement"; and Hoban was found guilty of attacking Echols, a Latin Kings member. Anderson accepted the recommendation and repeated these reasons for denying Hoban protective custody on February 8, 2012.

After his second grievance was denied, Hoban returned to the general population. He shared a cell with Michael Pinon, a Hells Angel member and self-proclaimed hit man for the Latin Kings. Before Pinon became Hoban's cellmate, Hoban warned the gallery officer not to put them in the same cell, but she disregarded the warning. According to Hoban, during the first night in their cell, Pinon "lunged" at him, starting a fight that resulted in "[s]ome scratches" to Hoban, but "nothing serious." The next morning Hoban reported the fight to a prison guard and was moved to a different cell.

Hoban amended his complaint on December 11, 2013. He restated failure-to-protect claims against Anderson and Pfister and added a failure-to-protect claim against Vilt. Vilt, recall, had recommended, before Hoban filed his original complaint, against

putting him in protective custody. Hoban also sued Vilt for exhibiting deliberate indifference to his medical needs while he was in disciplinary segregation. In addition Hoban brought a failure-to protect claim against Benton, who had recommended against protective custody after Hoban filed his original complaint. Finally Hoban added new claims against Pfister and Vilt, who, Hoban said, rebuffed his complaints about the disciplinary segregation cell's "inhumane conditions."

The district court granted the summary judgment motion in favor of all defendants. Regarding the conditions-of-confinement and medical-indifference claims from the amended complaint, the court ruled them untimely under the applicable two-year statute of limitations. The court also ruled that Hoban did not exhaust his administrative remedies on his failure-to-protect claims against the defendants, other than Benton, because he had filed his original complaint against them before the Administrative Review Board had completed its grievance proceedings. And the court ruled that Hoban did not establish a triable question on the merits against Benton.

On appeal Hoban first raises two arguments about the timeliness of the conditions-of-confinement and medical-indifference claims that he maintains on appeal. These claims first appeared in his complaint filed on December 11, 2013. According to him, the accrual date for these claims should have been in February 2012 (when his second grievance was exhausted). He is wrong. The district court correctly used September 13, 2011, the date that he exhausted his first grievance. That is the grievance that raises his complaints about the conditions of his cell in segregation and his inability to receive some of his medicines. The exhaustion of those claims ended the tolling of the statute of limitations that occurred during the administrative grievance process and triggered the two-year time limit to sue. *See Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012). By contrast his second grievance focused on his request for protective custody. Because Hoban filed these newly stated claims on December 11, 2013, and the filing deadline for these claims was September 13, 2013, the district court correctly found the claims time-barred.

Second, Hoban contends that the district court erred by not granting him equitable tolling for his conditions-of-confinement and medical-indifference claims. He asserts that his recruited lawyer "abandon[ed]" him for about eight months after these claims accrued. But his attorney's alleged neglect does not warrant tolling the statute of limitations because complying with the filing deadline was not attributable to an "extraordinary circumstance" outside of Hoban's "control." *Menominee Indian Tribe of*

*Wis. v. United States*, 136 S. Ct. 750, 756 (2016). Tolling the statute of limitations based on his attorney's alleged negligence would render the limitation meaningless. *See Williams v. Sims*, 390 F.3d 958, 963 (7th Cir. 2004).

Hoban next challenges the grant of summary judgment to Benton on his claim that she was deliberately indifferent to the threat from Latin King members. He points to his affidavit stating that he gave her a list of Latin King inmates who "tried to murder" him and showed her pictures of his "bloody" body after attacks by the gang at Cook County Jail. Based on this evidence, he asserts that a jury reasonably could find that Benton knew that he faced a substantial risk of serious harm. He is incorrect because he declared in his affidavit that the Latin King inmates on his list were not at Pontiac Correctional Center (where he is incarcerated); they are all housed at Stateville and Menard Correctional Centers. Hoban's list of hostile inmates at other prisons is too vague of a threat to his safety at Pontiac for a reasonable factfinder to conclude that Benton had "actual knowledge of impending harm" to him. *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008) (internal quotation marks omitted). *See also Davis v. Scott*, 94 F.3d 444, 446–47 (8th Cir. 1996) (jury could not reasonably conclude that prison officials exhibited deliberate indifference by returning prisoner to "the general population" when "the inmates on [his] enemies list were no longer incarcerated" at the prison).

Hoban finally argues that he exhausted his administrative remedies for his failure-to-protect claims against other defendants, relying on *Barnes v. Briley*, 420 F.3d 673 (7th Cir. 2005). He understands *Barnes* to say that, even if a prisoner does not exhaust claims in his original complaint, the court may properly consider them in an amended complaint as long as the amended complaint contains an exhausted claim.

The district court correctly concluded that 42 U.S.C. § 1997e(a) barred Hoban's failure-to-protect claims against Anderson and Pfister because those claims were not administratively exhausted when he first brought them in his original complaint. Hoban misreads *Barnes*, which held only that when filing an amended complaint, a prisoner may bring a claim newly *discovered* after filing the original complaint and administratively exhausted by the time of the amended complaint's filing. *See Barnes*, 420 F.3d at 678. All of the facts regarding Hoban's claim that Pfister failed to provide him with protective custody were known to him when he filed his original complaint. Moreover Hoban did not exhaust his claims against Pfister and Anderson before filing his original complaint. Because he is "time-barred by the prison's grievance policy from

further pursuing administrative remedies for these events, he could do nothing to cure the failure to exhaust." *Hill v. Snyder*, 817 F.3d 1037, 1040 (7th Cir. 2016).

That brings us to the problem that the district court granted summary judgment to Vilt on exhaustion grounds for the failure-to-protect claim even though he did not ask for that relief. Ordinarily, before a district court enters summary judgment against a plaintiff, the plaintiff is entitled to a chance to present his evidence and arguments for why a trial is needed. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986); *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 603 (7th Cir. 2015). But the fatal flaw in Hoban's failure-to-protect claim against Vilt is the same as applies to the failure-to-protect claim against Pfister: Hoban knew of these claims when he first sued for not receiving protective custody, but he had not yet exhausted his administrative remedies. Hoban gives us no reason on appeal to believe that he did not know of his failure-to-protect claim against Vilt before filing his original complaint or that the exhaustion analysis for Vilt is any different from the unexhausted claim against Pfister. Therefore the district court did not commit reversible error in granting summary judgment for Vilt.

AFFIRMED.