Barrett, Circuit Judge, dissenting.
 

 As the plaintiffs briefed and argued this case, they would have lost it. They argued that the defendants violated the Eighth Amendment by discharging their weapons into the ceiling, rather than into the shot box, immediately after the fight had been broken up and there was no plausible need for that use of force. But they did not argue-and had no evidence to prove-that the defendants intentionally hit anyone. That deficit should have been fatal, because if the officers did not intend to hit anyone, they could not have done so "maliciously and sadistically," as
 
 Whitley v. Albers
 
 requires.
 
 475 U.S. 312
 
 , 320,
 
 106 S.Ct. 1078
 
 ,
 
 89 L.Ed.2d 251
 
 (1986). The guards may have acted with deliberate indifference to inmate safety by firing warning shots into the ceiling of a crowded cafeteria in the wake of the disturbance. In the context of prison discipline, however, "deliberate indifference" is not enough.
 

 The Supreme Court has drawn a clear distinction between the standard applicable to claims challenging the conditions of confinement and the standard applicable to claims challenging the use of excessive force. In
 
 Farmer v. Brennan
 
 , it explained
 that prisoners challenging the conditions of their confinement must show that officials were deliberately indifferent to an excessive risk to inmate health or safety, and that "deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk."
 
 511 U.S. 825
 
 , 836,
 
 114 S.Ct. 1970
 
 ,
 
 128 L.Ed.2d 811
 
 (1994). Put differently, deliberate indifference means criminal recklessness.
 

 Id.
 

 at 839-40
 
 ,
 
 114 S.Ct. 1970
 
 ("[S]ubjective recklessness as used in the criminal law is a familiar and workable standard that is consistent with the Cruel and Unusual Punishments Clause as interpreted in our cases, and we adopt it as the test for 'deliberate indifference' under the Eighth Amendment.").
 

 The Court emphasized, however, that " 'application of the deliberate indifference standard is inappropriate' in one class of prison cases: when 'officials stand accused of using excessive physical force.' "
 

 Id.
 

 at 835
 
 ,
 
 114 S.Ct. 1970
 
 (citation omitted);
 
 see also
 

 Whitley
 
 ,
 
 475 U.S. at 320
 
 ,
 
 106 S.Ct. 1078
 
 (holding that the "deliberate indifference" standard does not apply in the context of prison security). In that context, "the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.' "
 
 Whitley
 
 ,
 
 475 U.S. at 320-21
 
 ,
 
 106 S.Ct. 1078
 
 (citation omitted). The Court has described this as a "very high state of mind" requirement-one much higher than the criminal recklessness necessary to show deliberate indifference.
 
 Farmer
 
 ,
 
 511 U.S. at 836
 
 ,
 
 114 S.Ct. 1970
 
 . The
 
 Whitley
 
 factors are designed to evaluate this "very high state of mind" by smoking out
 
 why
 
 the guard inflicted harm: was it to maintain discipline or for the satisfaction of hurting the prisoner? A guard who injures a prisoner by using force in the absence of a reasonable belief that a threat exists and without any effort to temper the severity of the force can be thought to knowingly will "the
 
 unjustified
 
 infliction of harm."
 
 Whitley
 
 ,
 
 475 U.S. at 321
 
 ,
 
 106 S.Ct. 1078
 
 (emphasis added). In other words, those circumstances support an inference that the guard acted in extreme bad faith rather than "in a good faith effort to maintain or restore discipline."
 

 Id.
 

 at 320
 
 ,
 
 106 S.Ct. 1078
 
 .
 

 An inmate cannot satisfy the "malicious and sadistic" standard without showing that a guard intended to hit or harm someone with his application of force. After all, if the guard did not intentionally apply force to a prisoner, how could he have had a malicious and sadistic intent to cause him pain? In the absence of an intent to exert force on someone, there is nothing for the
 
 Whitley
 
 factors to probe.
 
 [1]
 
 That is presumably why the cases treat the intent to make physical contact as a given-I have been unable to find any case, in either the Supreme Court or our circuit, in which an excessive force claim did not involve force directly and intentionally applied to the plaintiff. (That is true, incidentally, of both successful and unsuccessful claims.) In
 
 Whitley
 
 , a guard deliberately shot the plaintiff in the knee, following orders to "shoot low at any prisoners climbing the stairs" behind an officer engaged in an effort to free a hostage.
 

 475 U.S. at 316
 
 ,
 
 106 S.Ct. 1078
 
 . In
 
 Hudson v. McMillian
 
 , the guard "punched Hudson in the mouth, eyes, chest, and stomach while [another guard] held the inmate in place and kicked and punched him from behind."
 
 503 U.S. 1
 
 , 4,
 
 112 S.Ct. 995
 
 ,
 
 117 L.Ed.2d 156
 
 (1992).
 
 See also
 

 Wilkins v. Gaddy
 
 ,
 
 559 U.S. 34
 
 , 35,
 
 130 S.Ct. 1175
 
 ,
 
 175 L.Ed.2d 995
 
 (2010) (the officer "slammed [the plaintiff] onto the concrete floor" and "proceeded to punch, kick, knee, and choke [him]."). Our own excessive-force cases have been brought against officers who intentionally shot, tasered, physically assaulted, or pepper sprayed prisoners.
 
 See, e.g.
 
 ,
 
 Rice ex rel. Rice v. Corr. Med. Servs.
 
 ,
 
 675 F.3d 650
 
 , 668 (7th Cir. 2012) (pepper spray);
 
 Lewis v. Downey
 
 ,
 
 581 F.3d 467
 
 , 475-78 (7th Cir. 2009) (taser);
 
 Fillmore v. Page
 
 ,
 
 358 F.3d 496
 
 , 501-05 (7th Cir. 2004) (assault);
 
 Kinney v. Indiana Youth Center
 
 ,
 
 950 F.2d 462
 
 , 464-65 (7th Cir. 1991) (gun-shot).
 

 Faced with this hole in the plaintiffs' case, the majority gives them an assist by changing the case. It offers two theories of why the plaintiffs can show that the guards intended to shoot the inmates. First, it insists that the guards might have shot directly into the crowd of inmates, rather than at the ceiling. Second, it suggests that the guards might have intentionally tried to hit the inmates by bouncing buckshot off of the ceiling. Yet the plaintiffs did not raise the first argument at all before us, and the second argument consists of one oblique sentence in their brief. And in any event, there is insufficient evidence in the record to permit a reasonable juror to draw either conclusion.
 

 In the district court, the plaintiffs relied on the hearsay testimony of two other inmates to support the claim that the guards shot directly into the crowd. The defendants, in contrast, swore in their affidavits that they aimed at the ceiling. The district court resolved that issue against the plaintiffs. It stated:
 

 Plaintiffs have speculated that the Officer Defendants were aiming at them, but it is undisputed that they did not see where the Officer Defendants were aiming and there is no admissible evidence that would create a genuine factual dispute regarding where the Officer Defendants aimed. ... Plaintiffs have attempted to create a factual dispute by asserting that two inmates, identified only as "Rico" and "Fuzz," told McCottrell that they observed one of the Officer Defendants aiming at the inmates. This statement, however, is inadmissible hearsay, and the Court may not consider it at the summary judgment stage. As a result, there is no evidence suggesting that the Officer Defendants aimed at the inmates.
 

 Memorandum Opinion and Order at 12 (record citations omitted).
 

 The plaintiffs have not challenged either the district court's evidentiary ruling or its conclusion that the plaintiffs had failed to create a factual dispute on this issue. That was a prudent choice. The district court's resolution of the hearsay issue was plainly correct, and without that testimony, the plaintiffs have no evidence that the officers shot into the crowd. It bears emphasis that this is so even if the officers lied in their affidavits about the direction of the shots. A plaintiff cannot discharge her burden simply by tearing the defendant's case down; "[i]nstead, the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment."
 
 Anderson v. Liberty Lobby, Inc.
 
 ,
 
 477 U.S. 242
 
 , 256,
 
 106 S.Ct. 2505
 
 ,
 
 91 L.Ed.2d 202
 
 (1986).
 

 Although the plaintiffs do not ask us to reverse this ruling, the majority, reading between the lines of the brief, maintains that "the plaintiffs' arguments ... encompass
 both the possibility that the shots were fired into the ceiling ... or toward the inmates." Maj. Op. at 658. Yet in the absence of an explicit factual assertion that the officers fired into the crowd, much less an explicit request that we reverse the district court, it is safe to say that the plaintiffs have waived this argument on appeal. The majority resurrects the issue on its own, and-faulting the district court for failing to appreciate the significance of circumstantial evidence-concludes that the plaintiffs can rest on the fact that shots hit them to prove that the guards fired at them. That argument should have lost even if the plaintiffs had made it. One can draw two plausible inferences from the circumstantial evidence of the plaintiffs' injury: the buckshot hit them either directly or by ricochet. The officers' affidavits and the prison's internal affairs report, which asserts that the "[i]nmates were struck with pellets from the ricochet" of warning shots, support the ricochet theory.
 
 [2]
 
 The plaintiffs introduced no admissible evidence in support of the "direct hit" theory.
 
 [3]
 
 There is therefore insufficient evidence to permit a reasonable juror to find that fact in the plaintiffs' favor.
 

 As for the claim that the guards indirectly aimed at the plaintiffs by intentionally bouncing buckshot off the ceiling and into the crowd: this too is an argument that the plaintiffs do not develop and that the evidence does not support. To be sure, the plaintiffs contend that the guards fired into the ceiling and that the buckshot then ricocheted and hit them. But to show that the guards intentionally shot them-as opposed to recklessly disregarding the risk that the buckshot would ricochet-the plaintiffs needed to introduce some evidence that guards were intentionally, albeit indirectly, aiming to hit them.
 
 [4]
 
 For
 example, the plaintiffs could have introduced evidence that the ceiling was composed of a material that made ricochet very likely; in that event, firing into the ceiling might be the functional equivalent of firing into the crowd. Rather than introducing such evidence, however, plaintiffs made the opposite argument: they insisted (as part of their effort to show that the guards shot directly into the crowd) that it is " 'unlikely that both defendants fired into [the] ceiling' because the ceiling is acoustic tile and would not have caused a ricochet." Memorandum Opinion and Order at 5 n.3.
 

 The most that the plaintiffs say to support a "deliberate ricochet" theory is that "a reasonable jury could [ ] determine that Defendants' decision to shoot in the first place and their failure to hit the shot box intended to catch buckshot was because they did not want the buckshot caught." The guards' failure to hit the shot box is certainly evidence in the plaintiffs' favor. But without any evidence of how likely ricochet was from the ceiling, the comparatively lower risk of ricochet from the shot box would not permit a reasonable jury to find that the officers pinballed buckshot off the ceiling with the intent to hit a prisoner.
 

 If the plaintiffs could win by showing that the guards recklessly put them at risk by firing warning shots into the ceiling after the fight on the floor was under control, I would agree that they could survive summary judgment. But because that is not the standard, I respectfully dissent.
 

 That is not to say that the guard must intend to exert force on the particular inmate who is injured.
 
 See
 

 Gomez v. Randle
 
 ,
 
 680 F.3d 859
 
 , 862, 864-65 (7th Cir. 2012) (reversing the dismissal of a claim against a guard who fired into a crowd rather than at one specific inmate). The point is that the guard must maliciously and sadistically exert force on someone. And the officer in
 
 Gomez
 
 , who fired "into the inmate population,"
 

 id.
 

 at 862
 
 , exerted force on the inmates at whom he fired.
 

 The majority minimizes the report's repeated statements that the plaintiffs were injured by ricochet, asserting that these statements reflect no more than an assumption about the direction of the shots. Maj. Op. at 657 n.4. It was not an assumption. The report concludes by stating that "[a]fter a total review of the evidence, statements, reports, and all available facts," the investigators determined that White and Williams "used an unreasonable amount of force (
 
 warning shot
 
 )" in violation of Department policy. (Emphasis added). A "warning shot" is one intentionally aimed away from people. The report does not identify a single piece of evidence suggesting that there was direct fire, and such evidence would have been important, to say the least, in an investigation of whether the officers used unreasonable force.
 

 According to the majority, my view is that "a court would be required to conclusively credit a witness's sworn statement that it was not raining even in the face of the proverbial wet umbrella." Maj. Op. at 657. That is certainly not my view. The overwhelming inference raised by the circumstantial evidence of a wet umbrella is that it was raining outside; the inference is nowhere close to as powerful here. I'm also unsure why the majority invokes "the force with which the buckshot arrived ... and the number of persons injured" as additional circumstantial evidence that the guards aimed at the prisoners rather than at the ceiling. Maj. Op. at 656-57. As an initial matter, the record contains no evidence about the force with which the bullets hit the inmates, and the incident report, which determined that the inmates' injuries were "minor," is inconsistent with the proposition that the shots hit the inmates with great force. Moreover, the force of the hit and the number of injuries support the "direct hit" theory only if those two factors would be different with a hit from ricochet. Maybe they would be. To carry their burden on summary judgment, though, the plaintiffs would have had to introduce evidence to support that.
 

 The majority says that under my reading of
 
 Whitley
 
 , "a guard could blindly unload a shotgun above a crowd of bystanders with impunity because making contact is not a certainty." Maj. Op. at 665. But those facts-a guard emptying his shotgun above a crowd of bystanders-raise an inference that the guard intended for a bullet to hit someone. The facts in this case-two guards each firing a warning shot into the ceiling-do not, standing alone, raise the same inference. It is also worth observing that a guard who shoots a gun outside the context of prison discipline is subject to the "criminal recklessness" standard of
 
 Farmer v. Brennan
 
 , and there is no doubt that unloading a shotgun above a crowd of bystanders would be criminally reckless.
 
 511 U.S. 825
 
 , 839-40,
 
 114 S.Ct. 1970
 
 ,
 
 128 L.Ed.2d 811
 
 (1994).